Argued at Pendleton October 26; reversed November 10; rehearing
denied December 22, 1936

## SIEGMAN *v.* SIEGMAN ET UX.

(62 P. (2d) 16)

Department 2.

174

*George H. Brewster,* of Redmond (L. M. Bechtell, of Prineville, on brief), for appellants.

*Bernard H. Ramsey,* of Madras (N. G. Wallace, of Bend, on brief), for respondent.

BEAN, J. It is plaintiff's contention that no suffi-
cient counterclaim was pleaded by defendants. This is
the main question in the case. Section 2-1001, Oregon
Code 1930, provides that a judgment for a nonsuit may
be given against the plaintiff, (1) on motion of the
plaintiff, at any time before trial, unless a counterclaim
has been pleaded as a defense; (2) on motion of either
party, upon the written consent of the other filed with
the clerk; (3) on motion of the defendant, when the
action is called for trial, and the plaintiff fails to
appear, or when after the trial has begun, and before
the final submission of the cause, the plaintiff abandons
it, or when upon the trial the plaintiff fails to prove a
cause sufficient to be submitted to the jury.

Section 1-610, Oregon Code 1930, provides: ''The
answer of the defendant shall contain, * * * (2) A
statement of any new matter constituting a defense
or counterclaim, in ordinary and concise language,
without repetition.'' Section 1-611 provides as follows:

''The counterclaim mentioned in section 1-610 must
be one existing in favor of the defendant, and against
a plaintiff, between whom a several judgment might be
had in the action, and arising out of one of the following
causes of action:

''(1) A cause of action arising out of the contract
or transaction set forth in the complaint, as the founda-
tion of the plaintiff's claim.

''(2) In an action arising on contract, any other
cause of action arising also on contract, and existing
at the commencement of the action.''

It is shown by the complaint that about December,
1932, and January, 1933, defendants entered into a
verbal agreement with this plaintiff, whereby plaintiff
agreed to leave his home in the state of Michigan and
come to defendants' home near Grizzly, in Jefferson
county, Oregon, and to construct a residence for de-

fendants on defendants' land, and to do such other and further carpenter work in the construction of other buildings and articles on and about defendants' land as defendants might desire, and to aid and assist defendants in the general work about their farm; in consideration of the foregoing defendants promised and agreed to furnish all material for the construction of said residence and other buildings and to pay plaintiff's fare from Michigan to Grizzly, Oregon, and to furnish plaintiff with a home for the remainder of his life, and to furnish plaintiff with spending money for his personal needs for the rest of his life and to furnish plaintiff with necessary and proper clothing for the rest of his life and "to furnish plaintiff with such land as he might require for the growing of ginseng plants for market, it being understood and agreed that said ginseng plants were to be grown and marketed by plaintiff for his own exclusive use and benefit".

Further, the complaint shows that plaintiff accepted the terms of the agreement above set forth and constructed a residence for defendants upon their lands and numerous other buildings and articles for the use and benefit of defendants, and did at all times between February 25, 1933, and October 1, 1935, when not engaged in carpenter work as aforesaid, or engaged in other work as hereinafter set forth, aid and assist defendants in the general farm work on and about defendants' farm, and did in all things fully do and perform all things to be done and performed by him under the terms of said agreement.

Plaintiff further alleges that defendants have failed, neglected and refused to carry out their portion of the agreement and violated and breached the terms thereof; that the reasonable value of the services performed by plaintiff under the terms of the agreement aforesaid

was in substance as follows: Construction of the residence on defendants' land, $1,600, and other items, including building of tables, woodshed and washhouse and several other items amounting in the aggregate to $2,353, besides some labor on the farm which plaintiff alleges was equal to the value of the board and room furnished plaintiff during said time; that defendants have failed and refused to pay plaintiff said sum or any portion thereof, except $12.50 as spending money, and the sum of $40 expended by defendants for clothing during said period, and that there is still due, owing and unpaid from defendants to plaintiff the sum of $2,300.50.

The defendants interposed demurrers to the complaint, which were overruled. Thereafter defendants filed an answer denying the allegations contained in the complaint, except as set forth in the answer. Defendants admit the agreement that plaintiff was to come to Oregon and live with the defendants, working for his board and in consideration thereof defendants agreed to pay plaintiff's carfare to Oregon, to furnish plaintiff with a home so long as he cared to live with defendants, to furnish plaintiff with a reasonable amount of spending money and necessary clothing, and "also to furnish plaintiff with land for the growing of ginseng plants"; that plaintiff came to Oregon and aided in the construction of a dwelling house and other buildings; that defendants failed and refused to pay plaintiffs the sum of $2,353, except such sums of money as defendants advanced plaintiff for carfare, tobacco, spending money and for clothes.

For a separate answer defendants allege in substance that plaintiff H. C. Siegman is the brother of defendant A. J. Siegman and is of the age of 70 years, and that plaintiff agreed to come to Oregon and work

for them for his board. Defendants allege that plaintiff was to do the work and remain sober and under no circumstance to partake of intoxicating liquor; that defendants performed each and every covenant to be kept and performed by them, and

"that defendants furnished plaintiff with a piece of ground, selected by plaintiff for the growing of ginseng plants and furnished lumber, nails and other materials for the construction of a shed, 118 feet long by 65 feet wide, in which to grow said ginseng plants. That defendants furnished plaintiff with a team of horses, axes, and labor to aid plaintiff in the construction of said shed or covering for the growing of ginseng plants, and also furnished plaintiff with labor and materials for the construction of a well from which to pump water for the irrigation of said ginseng plants and in every way defendants fully performed each and every condition to be performed by defendants and still are ready, able and willing to furnish plaintiff with a good home, furnish his clothing, spending money, and such land as plaintiff may require for the purpose of growing ginseng plants."

Defendants further allege that plaintiff breached the agreement and became intoxicated whenever he could obtain liquor, often leaving defendants' ranch for a period of from two days to a week on a spree; that plaintiff failed to do any farm work at all, except at times in a garden; that plaintiff failed to reside with defendants and was continually leaving defendants and working for others; that on May 27, 1935, plaintiff went on a drunken debauch and while drunk fell and broke his wrist and refused to permit defendants to obtain a doctor, so the bones could be set; that by reason of plaintiff's broken wrist he was unable to do any work at all from May 27, 1935, until he left defendants' abode in October, 1935, except that plaintiff worked on his

ginseng plants with one hand; that plaintiff left defendants' ranch and since has not lived with defendants.

For a further and separate answer and by way of a cross complaint defendants allege the making of the contract for plaintiff's work, practically as set forth; that defendants performed every part of the agreement, and, among other things, purchased ginseng plants and ginseng seed for plaintiff, and further alleged:

"That plaintiff appropriated for his own use a quantity of lumber belonging to defendants for the purpose of making a rowboat and that said lumber was of the reasonable value of $25.00.

"That plaintiff in October, 1935, appropriated to his own use a rifle belonging to the defendants of the value of $25.00.

"That plaintiff did in October, 1935, appropriate various and sundry tools belonging to the defendants of the value of $15.00.

"That defendants, at the special instance and request of the plaintiff, furnished certain lumber to plaintiff of the value of $200.00 for the purpose of constructing a ginseng shed."

And that plaintiff has refused to pay defendants therefor, and that plaintiff is indebted to defendants for the reasonable value of the aforesaid articles in the sum of $265, all of which is unpaid, and demand judgment against the plaintiff on the cross complaint in the sum of $265.

The new matter in the answer was put in issue by the reply. The pleadings are long and not easy to construe. Plaintiff alleges that defendants breached the contract, and he sues for the reasonable value of his services, or upon an implied contract.

■ The defendants set up a counterclaim for the reasonable value of certain articles upon an implied contract. We think the counterclaim is a cause of action

arising out of the contract or transaction set forth in the complaint as a foundation for plaintiff's claim, and that it would prevent the granting of a voluntary nonsuit.

In view of the fact that this case is to be sent back for trial we believe it is proper to notice other features. As we understand, the trial court held the complaint should have been for damages instead of upon quantum meruit. This whole matter is a dispute between the two brothers that should be settled in a trial before a jury.

■ In *Krebs Hop Co. v. Livesley,* 59 Or. 574, at page 579 (114 P. 944, 118 P. 165, Ann. Cas. 1913 C, 758), the rule quoted from *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59, 80 (N. E. 773, 40 L. R. A. 33), is as follows:

"It is well settled that, where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: (1) He may treat the contract as rescinded, and recover upon quantum meruit so far as he has performed; or (2) he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing."

■ The plaintiff in this case has elected to rely upon the first remedy and sue upon quantum meruit for the work that he had performed. We do not think that he was compelled to bring an action for damages for breach of contract. If the plaintiff's complaint is not plain or is wanting in some respect the plaintiff should apply to the court to amend the same.

The voluntary nonsuit must be set aside; therefore the case is reinstated. We think the counterclaim comes

within the rule laid down in *Kondo v. Aylsworth,* 81 Or. 225 (158 P. 946).

As we understand, the plaintiff contends that the counterclaim is founded upon a tort and not upon contract, and for that reason there was no proper counterclaim. In the case of *Meadow Valley Land Co. v. Manerud,* 81 Or. 303 (159 P. 559), a cross-complaint alleges that plaintiff appropriated a horse to its use of the reasonable value of $300. This court upheld that allegation as stating a sufficient counterclaim. It was there contended that the counterclaim sounded in tort and did not constitute a counterclaim in an action on the contract.

■ In *La Grande Nat. Bank v. Oliver,* 84 Or. 582 (165 P. 682), a counterclaim was pleaded alleging conversion of some grain. The court held that the new matter in the answer did not constitute a counterclaim and directed a verdict for the plaintiff. Upon appeal the case was reversed, this court quoting from 1 C. J. 1033, § 159, as follows:

"The rule is well settled that, where personal property has been wrongfully taken and converted into money or money's worth, the owner may waive the tort and sue the wrongdoer in contract for money had and received, upon the theory that he ratifies the sale as made for his benefit and sues to recover the proceeds as money had and received to his use."

The court further held that an action for damages would lie in such a transaction, but the one who was rightly the owner of the money had the election to proceed upon the implied contract, and that the other party can not elect that he himself shall be sued for the tort and not upon the implied contract. See also *Daniels v. Foster & Kleiser,* 95 Or. 502 (187 P. 627).

■ In the case at bar there is no allegation that the plaintiff wrongfully took or converted the lumber and other articles contained in the counterclaim, nor is there any allegation of damages. The counterclaim does not sound in tort. Defendants had the right to waive the tort, if there was one, and sue upon an implied contract for the reasonable value of the goods.

While the pleadings are not a good model, we think there is an issue raised by the complaint and the answer and also by the new matter set forth in the answer, which is denied by the reply.

Plaintiff argues that the furnishing of the lumber by defendants for the ginseng shed was a part of the contract to be performed on their part. It appears from the pleadings that defendants were to furnish land for the growing of ginseng plants ''for market, it being understood and agreed that said ginseng plants were to be grown and marketed by plaintiff for his own exclusive use and benefit''. If the construction of the large shed was a necessary part of the growing of ginseng plants, as this was to be done by plaintiff for his own use and benefit, defendants would not be required to furnish lumber to plaintiff free of cost. Defendants claim, in effect, that they furnished plaintiff more than they were required to furnish under the agreement. It is urged that the shed would be on their land and for defendants' benefit. Whether the shed would be of any value to them after constructed, other than to wreck for old lumber, does not appear. Under the pleadings all these matters could be explained in the testimony.

It is noticed that in the long account of items claimed by plaintiff ranging from the construction of a residence, $1,600, and building a woodshed and washhouse, $100, to building quilting frames, $3, and many other

items, aggregating $2,353, plaintiff does not charge defendants for the construction of the large ginseng shed, leaving room for defendants to claim the lumber for the shed as an expense, or a part of the raising of the ginseng plants for plaintiff.

The judgment of the circuit court must be reversed and the cause remanded for trial.

The judgment for costs and disbursements in this case will be postponed until the final trial and determination of the case.

It is so ordered.

RAND, BAILEY and BELT, JJ., concur.