Argued January 9, reversed and remanded January 30,
rehearing June 3, former opinion adhered to
July 31, 1963

# OREGON FARM BUREAU *v.* THOMPSON ET AL

378 P. 2d 563
384 P. 2d 182

*Duane Vergeer,* Portland, argued the cause for appellant. On the brief were Vergeer & Samuels and Charles S. Crookham, Portland.

*Kenneth E. Roberts,* Portland, argued the cause for respondent Thompson. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, and David B. Williamson, St. Helens.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

## ROSSMAN, J.

This is an appeal by the plaintiff, Oregon Farm Bureau, an Oregon insurance corporation, from a decree which the circuit court entered in favor of the defendants Frank Thompson and Dean Kellar. The suit which ended in the challenged decree was instituted by the plaintiff under ORS 28.010 through 28.160 to secure a declaration of the rights of the parties under a policy of liability insurance issued by it July 5, 1960, to the defendant Thompson. Thompson, who identified himself (1) in his 1960 federal income tax return as a "logger" and (2) in his testimony as "a tree farmer," owned a tract of land in Columbia County upon which the defendant Dean Kellar sustained an injury. In March 1960 Kellar entered the employ of Thompson and on September 21, 1960, while working for the latter, sustained the injury. This suit was filed after he instituted an action for damages based upon the injury. Thompson claims that Kellar was working as

"a farm employee" at the time of his injury; the plaintiff contends that at that time Kellar was working as a logger. Kellar's testimony was in accord with the latter view. The issue thus developed is important due to provisions of the policy of insurance which we will presently quote.

The suit for declaratory relief prayed for a decree determining whether the plaintiff is required to defend Thompson in the personal injury action just mentioned, and, if so, whether it is required to pay a judgment which Kellar may recover against Thompson. The decree that was entered and which is challenged by this appeal ruled that the policy just mentioned

"* * * insures and provides coverage to the defendant Thompson for the claim of the defendant Kellar and that the plaintiff is required to defend the defendant Thompson in the action filed against him by the defendant Kellar and is required to pay any judgment rendered in favor of the defendant Kellar against the defendant Thompson."

The briefs mention the following provisions of the policy:

"Insuring Agreements

"I. Coverages

"Coverage A—Bodily Injury Liability. To pay on the behalf of the insured all sums which the insured shall become legally obligated to pay by reason of the liability imposed upon him by law for damages, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons. * * *

"Exclusions

"This policy does not apply: * * *

"(B) Under Coverages A and C:

"(1) to bodily injury to, or sickness, disease or death of any employee of the insured, if benefits therefor are payable or required to be provided, under any Workmen's Compensation Law;

\* \* \*

"Farm Employers Protective Endorsement

\* \* \*

"Insuring Agreements

"1. Farm Employers Protective Coverage. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury by accident or occupational disease, including death at any time resulting therefrom, sustained by any farm employee while engaged as such in the employment of the Insured.

\* \* \*

"Exclusions

"This endorsement and the insurance provided herein does not apply:

\* \* \*

"(c) to bodily injury to, or sickness, disease or death of any employee of the insured, if benefits therefore are payable or required to be provided under any Workmen's Compensation Law."

According to ORS 656.090, "farming is a non-hazardous occupation" and is not subject to the Workmen's Compensation Act unless the employer files the notice prescribed in ORS 656.034. No notice of that kind was filed. Logging is classified by ORS 656.084 (3) as a hazardous occupation. Thompson had not given the notice of rejection required by ORS 656.022 to 656.028 and 656.034 to remove him from the application of the Workmen's Compensation Act. Following

the injury, the Industrial Accident Commission held a hearing upon the issue as to whether Kellar, at the time of his injury, was working as a farm employee or as a logger. Thompson testified as a witness in the course of the hearing. At its close the commission entered an order which awarded workmen's compensation to Kellar. The insurance company contends that the ruling is res judicata of the issue logger versus farm laborer. We do not pass upon that contention; but see *Holmes v. State Industrial Accident Commission,* 227 Or 562, 362 P2d 371, 363 P2d 563.

Possibly the foregoing will be clarified if we gather into one paragraph some of its facts. Since farming is not listed by the Workmen's Compensation Act as hazardous, and since Thompson had not elected to bring his farming operations, if any, under the act, Kellar was not entitled to receive workmen's compensation benefits if his injury befell him while he was engaged as a farm worker. Upon the other hand, if Thompson was engaged in whole or in part in logging operations, and if Kellar was performing that type of work at the time of his injury, he was entitled to receive workmen's compensation benefits even though Thompson had not affirmatively accepted the act; work of that kind is classified by the Workmen's Compensation Act as hazardous. If Kellar's action for damages alleges that he was injured while performing farm labor, then plaintiff, as Thompson's insurer, is required to defend Thompson in the action because of the provision of the policy that we have quoted; it requires the plaintiff to defend "even if such suit is groundless." However, the provision does not require the plaintiff to defend Thompson if the injury occurred while Kellar was performing logging work. We noticed that Kellar is now receiving benefits under the

Workmen's Compensation Act upon a finding by the commission that his injury occurred in logging operations. Thompson, as we have said, was not a contributor to the Industrial Accident Fund, but he had not rejected the act. ORS 656.312 enables a workman who is engaged in a hazardous occupation to receive compensation benefits and at the same time maintain an action for damages against an employer who (1) operates in violation of ORS 656.052 or (2) is in default. In the event that a workman of that kind of an employer recovers a judgment and receives its payment he must repay the commission all sums it paid to him if the amount he was paid upon his judgment is sufficient in amount to enable him to do so. ORS 656.314.

The circuit court found that Kellar was performing farm labor when the injury was sustained September 21, 1960.

Thompson's defense in this suit was conducted upon the basis that he was a farmer and that Kellar was injured while performing farm work. Contending as he does that he (Thompson) was a farmer and that Kellar was performing farm work, Thompson argues that the insurance policy renders it the duty of the plaintiff to defend him in Kellar's action for damages. Thompson, however, conceded that in the six months period that passed after Kellar had entered his employ and until Kellar was injured he (Thompson) did much logging and used Kellar in conducting it. In fact, he testified that the two were partners. The trial judge ruled against that contention, and the latter has not been renewed upon appeal. We will give it no further mention.

The first assignment of error follows:

"The court erred in finding, concluding and de-

creeing (and overruling plaintiff's objections to the same):

"1. That plaintiff's policy, No. T-2950-70, covered the claim of Kellar against Thompson for injuries alleged to have resulted to Kellar on or about September 21, 1960 (Finding XII).

"2. That plaintiff was under an obligation to defend and/or pay any judgment that might arise from the action brought by Kellar against Thompson (Finding XII).

"3. That Exclusion (c) of the endorsement was not applicable to the claim of Kellar against Thompson (Finding X).

"The court likewise erred in rejecting plaintiff's proposed Findings of Fact, Conclusions of Law and Decree holding that:

"1. Plaintiff's policy was not applicable to the claim of Kellar against Thompson.

"2. Plaintiff was under no obligation to defend against or pay any judgment arising out of this claim."

The second assignment of error reads:

"The court erred in determining, finding, concluding and decreeing that Frank Thompson was entitled to recover attorney's fees against the plaintiff."

We will now consider the first assignment of error.

Kellar entered Thompson's employ in March 1960. Thompson described him as "a farm laborer." We have mentioned that in his 1960 federal income tax return Thompson identified himself as a logger and that in his testimony he declared that he was "a tree farmer." He owned and used in the logging operations that were conducted in the six months period that Kellar was in his employ the following logging equipment: a loader with a power winch which was operated on a vehicle;

a Continental motor generating 15 or 20 horsepower which seemingly operated the loader; a swinging crane 16 feet long; a drum attached to the crane which was equipped with 175 feet of half-inch cable; an International logging truck with a bunk bed; a flatbed Ford truck which was equipped with drop tongs; chain saws; a caterpillar tractor; and various items of small tools such as wedges and axes.

Thompson also owned a small sawmill which stood upon a tract of land in Columbia County to which he, as a witness, occasionally referred as the home place and at other times as the farm. The tract was 380 acres in extent and contained a stand of timber. Thompson operated the mill only occasionally.

If Thompson was a farmer, the 380 acre tract just mentioned was the scene of his operations. Neither he nor anyone else mentioned any crop such as grain, fruit or vegetables which was grown upon it. At one time a little hay was produced on the place, but none recently. The only witness who mentioned any production upon the tract other than logs and pulp wood was the wife of the defendant Thompson. She testified as follows:

"Q There is no land under cultivation, actually, is there, except a garden?

"A No, just the garden.

"Q Just the garden?

"A We did raise hay but we got too many cows that needed the pasture."

She also testified:

"Q How many livestock and what type of livestock, do you have, or did you at that time, if you can remember approximately?

"A About a week before, in September, we had sold a bunch of young stock.

"Q Approximately, if you recall, how many had you sold and how many did you then have left?

"A We sold, I don't remember how many. It come to fifteen hundred dollars, the young stock—the young bull stock.

"Q How many animals did you have on the farm, generally?

"A We had about ten or twelve white-faced cows. These were their calves that we sold.

"Q Do you have any other kind of animals?

"A Yes, we have others.

"Q What?

"A We have a log horse.

"Q At the time did you have any other types of animals?

"A Chickens and rabbits, and some burros.

"Q Now in the area where this injury occurred, you indicated that you are familiar with this area, did you ever graze any of your animals in that area?

"A We had three goats we grazed in there."

The foregoing is the only indication as to what the 380 acre tract was used for except the testimony which shows that timber was removed from it. No one testified that the trees were felled so as to increase the area devoted to pasture or to secure space for farming. Evidently the trees were cut as a logging operation. Apart from Mrs. Thompson's statement that she received $1,500 from the "young stock" there is no other evidence that indicates the tract produced revenue as a farm. Her testimony is virtually the only evidence that the tract produced anything except logs and pulp wood. The evidence indicates that Thompson owned about 600 acres of other timber land. It will be re-

called that he stated in his federal income tax return that he was a logger and that as a witness in this case he described himself as a tree farmer. In short, he did not claim that he was a farmer within the traditional meaning of that word.

Kellar, as we have said, entered Thompson's employ about April 1, 1960. At that time Thompson was engaged in logging and intended to use Kellar in it. He agreed to pay Kellar $2 a cord for cord wood that Kellar would produce and $4 a thousand for logs. Kellar agreed to give some attention to the 380 acre tract and for farm work upon it Thompson agreed to pay him $1 per hour. According to his testimony, Kellar worked a total of 50 hours in farm work upon the 380 acre tract in the six months of his employment that transpired before his injury; and "just under a hundred hours" according to Thompson's testimony. When he entered Thompson's employ Kellar was given the occupancy of a house upon the 380 acre tract and agreed to pay $25 per month rental for it. But he also agreed to perform chores for which he was to be paid $25 per month, thus canceling out the house rental charge. Farm chores, according to the testimony, consisted of such tasks as returning to the property a cow that had strayed away. The chores were performed, according to agreement, after Kellar had completed his day's logging work.

It is possible to determine quite closely the total of wages paid by Thompson to Kellar for (1) logging work, (2) farm work, and (3) chores. The source of the information consists of (1) wage checks issued by Thompson to Kellar and cashed by the latter, (2) receipts signed by Kellar for cash wages paid to him by Thompson, and (3) bookkeeping entries made by Thompson. In the period of April 23, 1960, to Septem-

ber 9, 1960, Thompson, according to the pay checks and receipts (all of which Thompson produced) was paid $1,102.34 as logging wages. According to the above mentioned bookkeeping entries made by Thompson and produced by him, he paid Kellar down to the day of the injury (September 21, 1960) a total of $221 farm wages which included $125 for chores and $96 for 96 hours of farm work at $1 per hour. It will be noticed that although Kellar entered Thompson's employ not later than April 1 and remained in it until September 21, 1960, no record of logging wages was shown prior to April 23 and the submission of figures ended with September 9. But if we ignore that deficiency in the record and add $1,102.34 (logging wages) to $221.00 (farm wages) we have $1,323.34 as the total wages that were paid to Kellar in the period of approximately six months. Kellar, therefore, received 83.3 per cent of his wages for logging and 16.7 per cent for chores and farm work.

Before Kellar entered the employ of Thompson, the latter had purchased the stumpage upon a 20 acre tract of land near Deer Island. Only a part of that land contained timber. After Kellar entered Thompson's employ the two proceeded to fell the trees upon the tract. They were joined by a third individual who worked with them and was paid by Thompson upon the same basis as Kellar. Trees that were suitable for the production of logs were cut into logs. Other parts of the trees and other timber were cut into cord wood. Thompson sold the logs to Pope & Talbot. Cord wood was sold to Crown-Zellerbach and to Weyerhaeuser Timber Co. Deer Island is located many miles from Clatskanie, the scene of Thompson's purported logging operations.

After Thompson had completed his operations upon

the Deer Island tract, which consumed about one month, he transferred his work to a place known as Fern Hill. He owned that tract of land, and the work upon it, according to him, was "salvage operations." It consisted of the removal of logs and pulp wood that had been previously cut.

When Thompson had completed the removal of everything marketable from the Fern Hill tract he took Kellar with him to the home place, or rather to a 70 acre fraction of it, where they felled trees, produced logs and pulp wood as they had on the Deer Island place. September 21, 1960, while he and Thompson were bringing a log to the landing so that it could be placed upon the logging truck, it made an unexpected movement and injured Kellar. We did not refer to the item of timber with which the two men were working as "a log" for the purpose of classifying it as merchantable timber, but merely because the word "log" is readily available. Thompson said that that stick was not merchantable. He swore that it was a tree top. He and Kellar had spent many days before the injury in that area felling trees and producing logs. According to Thompson, the work that was under way at the time of Kellar's injury was a cleaning up of the property after the logging. As a witness he recognized the duty imposed by our laws upon loggers to keep forests clean of logging debris. He said that the material with which they were concerned was "tops" and that it was suitable only for firewood. The piece that injured Kellar was, according to Thompson, 12 or 14 feet long, 8 or 9 inches in diameter at its larger end and 5 or 6 inches in diameter at its smaller end.

On the day of Kellar's injury, but before the latter occurred, Thompson had delivered, from another property, two loads of logs to a mill. While he was so en-

gaged Kellar was building fence for Thompson. About three o'clock in the afternoon of that day Thompson summoned Kellar to the place where he shortly sustained his injury and ordered him to help load the truck. Kellar testified that there lay on the ground "a load of large logs" that were cut in the preceding days by Thompson, Thompson's brother, and himself. Kellar described the log that injured him as 16 feet long, 14 inches in diameter at its big end and 8 inches at its small end.

Thompson testified that the log in question and other material of like kind which he termed tree tops were to be taken to his home as firewood. Kellar, upon the other hand, swore that they were putting the "logs on the truck to take to the mill."

It is clear from the above facts that in the six months period in which Kellar was in Thompson's employ Kellar devoted the principal part of his time to logging. Including a monthly allowance for chores, the total farm wages that were paid to him in the six months aggregated only $221. In fact, the amount that was paid to Kellar for farm labor under the agreement calling for $1 per hour was only $96. Kellar thought that it was less than that amount. The extensive logging equipment which Thompson owned and the fact that he conducted his operations at times many miles from his so-called farm indicated that logging, and not farming, was the pursuit that engaged his attention.

At the moment of injury Kellar was performing a type of work which is generally deemed logging. He had set tongs upon the log that was to be dragged in by the cable and the power driven machinery. Noticing that the log moved very slowly, he approached it to determine the reason for the slow movement and was

injured when the log made an unexpected lunge. His activity at that moment was definitely logging labor.

Thompson testified that he intended that the logging truck should haul this stick of timber and some others to his home for firewood. Kellar did not agree with that testimony, and said that the logs with which they were working were to be taken to a mill. It is agreed that logging debris lay upon the ground and that a duty was owed to remove the debris. Thompson testified that the operation that was going on when the injury occurred was the clearing of debris from the land. If that is so, the operation was logging and not farming.

We sustain the assignment of error under consideration.

█ The second assignment of error is based upon an award to Thompson, the insured, of an attorney fee. The award was made by the circuit court under ORS 736.325 which says in part: "If * * * suit or action is brought * * * and plaintiff's recovery exceeds * * *." Thus, an award is authorized only in the event that recovery is won against the insurance company. In the present instance, as we have just ruled, the activity that was under way when Kellar was injured was not within the purview of the policy. Hence, the latter did not impose upon the plaintiff a duty to defend Thompson or pay any judgment that Kellar may recover. Those being the circumstances, ORS 736.325 does not authorize the award of an attorney fee in this suit. We deem it unnecessary to determine the merits of several ancillary contentions presented by the plaintiff such as its argument that ORS 736.325 has no application to a suit for declaratory relief. We sustain the second assignment of error.

The decree of the circuit court is vacated. The cause is remanded with instructions to enter a decree in accordance with the foregoing.

SLOAN, J., dissenting.

There was evidence in this case to sustain the trial court's finding that *Workmen's Compensation Act* payments were not "required." The trial court's finding should be affirmed.

**ON REHEARING**

*Duane Vergeer,* Portland, argued the cause for appellant. On the brief were Vergeer & Samuels and Charles S. Crookham, Portland.

*Kenneth E. Roberts,* Portland, argued the cause for respondent Thompson. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, and David B. Williamson, St. Helens.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

ROSSMAN, J.

The petition for a rehearing sumbits the following as its challenge to our decision:

"In support of the within petition defendant submits that this Court, in rendering its decision has erred in the following particulars:

"1. The Court exceeded constitutional and statutory limitations upon its right to re-examine Findings of Fact on the appeal of proceedings in the nature of an action at law, when it held contrary to the findings of the trial Judge, that an employee of defendant Thompson was not a farm employee engaged as such or in activities incidental to the operation of a farm at the time he was injured.

"2. The Court sustained the second assignment of error, overruling an award of attorney's fees to defendant-Thompson, upon an erroneous and unwarranted determination of fact on appeal."

ORS 28.090, which is a part of our Declaratory Judgments Act, states:

"When a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other actions at law or suits in equity in the court in which the proceeding is pending."

ORS 17.440, in specifying the procedure upon appeal in equity cases, provides:

"* * * on appeal to the Supreme Court the cause shall be tried anew without reference to such findings."

The Uniform Declaratory Judgments Act, written by the Commissioners on Uniform State Laws, and of which the Oregon act is largely a counterpart, does not prescribe in phraseology similar to ORS 28.090 the manner of trial. Its language is:

"When a proceeding under this Act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

The alteration to the language of the Uniform Act which was made by the Oregon Legislature seems to emphasize that whether the cause receives trial by a jury or the chancellor is dependent upon whether it is a law or an equity proceeding.

*Webb v. Clatsop Co. School District No. 3,* 188 Or 324, 215 P2d 368, declares:

"Counsel for plaintiffs contends that, under the declaratory judgments law, plaintiffs 'have a choice between impanelling a jury' and 'allowing the trial judge to decide the question of fact.' In this,

counsel is surely in error. The appropriate section of the statute reads: * * *"

At that point ORS 28.090, supra, was quoted.

The foregoing appears to answer the contention of the petition for a rehearing that we misapplied "constitutional and statutory limitations" upon this court's "right to re-examine Findings of Fact on the appeal of proceedings in the nature of an action at law."

In our previous decision we construed this cause, as the trial judge had, as governed by equity procedure. The complaint prayed for equitable relief. Thompson's answer did likewise. The final instrument which terminated the case and which was prepared by counsel for defendant Thompson was entitled "Decree." At the close of the plaintiff's case in chief, the trial judge, in unmistakable language, announced that he deemed that the cause was governed by equity rules. No objection was made by any one to that interpretation of the nature of the case. The defendant Thompson at no time asked for a jury trial of any issue or that the case be tried as one at law.

Notwithstanding the foregoing, we believe that the real contention of the petition for a rehearing is that we should now deem that the parties sought relief only of a law character and that, therefore, the instrument which Thompson's counsel prepared and entitled "Decree" was in truth a Judgment. If such was its nature and if this case was not subject to equity procedure, the findings were binding upon us and the excerpt which we quoted from ORS 17.440 has no application to this cause.

It will be necessary, in resolving the issue just

mentioned, to turn again to the pleadings and the evidence.

This case was instituted by the plaintiff, an insurance company, as one for declaratory relief. The defendant Thompson had only one employee, the defendant Kellar. Since the latter's status as a defendant in this case is unimportant, we will hereafter refer to Thompson as the defendant. As stated in our previous opinion, the plaintiff had issued a policy of liability insurance to the defendant as the insured. The plaintiff claims that the policy protected the defendant only in his farming operations.

Some time after the policy was issued, Kellar was injured while in the defendant's employ. He sought compensation from the Industrial Accident Commission upon a contention that his injury befell him while he was working as a logger. Since farming is a nonhazardous occupation, Kellar could obtain no compensation if he was injured while performing farm labor. The Commission, after a hearing, ruled that Kellar was injured while working for Thompson as a logger and awarded him compensation. Still later, Kellar filed an action for damages against this defendant (Thompson) in which he alleged that his injury was due to Thompson's negligence. At that point Thompson demanded that the plaintiff (insurance company) defend him against Kellar's claim. As we have seen, the plaintiff claims that the policy which it issued to Thompson requires it to defend Thompson only against claims that arose out of his farming operations. When Thompson made his demand that the plaintiff defend him against Kellar's action, the plaintiff filed this proceeding for declaratory relief. After setting forth the contentions of the parties which showed that a

controversy existed between them, it prayed for a decree declaring that (1) the plaintiff was required to defend Thompson only against claims that arose out of farming work; (2) Kellar was injured while performing logging work; (3) the award which the Industrial Accident Commission made to Kellar established that he sustained his injury while performing logging work; and (4) such other and further relief as appropriate be awarded plaintiff.

When Thompson was confronted with the complaint, he did not challenge the jurisdiction of a court of equity over the cause by filing a demurrer of the kind authorized by ORS 16.260 (1). He filed an answer which included the following:

> "* * * Kellar thereafter made application for the benefits of the Workmen's Compensation Law of the State of Oregon, and that a hearing officer took evidence on said application on March 28, 1961, and found that the defendant Kellar was entitled to said benefits which were thereafter paid to him on his behalf, and admits that this defendant claims a right or interest in the policy of insurance * * *."

Continuing, Thompson's answer submitted "an affirmative defense" which alleged that the plaintiff had issued to him not only the policy of insurance mentioned in the complaint but also another policy which agreed to protect him from any claims arising out of the operation of "a certain International two-ton truck, including the loading and unloading thereof." It alleged that Kellar "was either a farm employee of this defendant or was engaged with this defendant" in a joint venture for their mutual profit and gain. Then Thompson's answer averred:

> "This defendant contends that if the relation-

ship between the defendant Kellar and this defendant at the time of said accident was that of farm employee and employer, then the insurance policy attached to and made a part of the plaintiff's complaint is applicable and covers this defendant for the claim being asserted by the defendant Kellar against this defendant in the action referred to in paragraph IV of plaintiff's complaint. If the defendant Kellar was not a farm employee of this defendant at the time of said injury, but was engaged in a joint venture with this defendant at said time and place, then the said liability policy issued by the plaintiff covering said truck would be applicable and would protect and insure this defendant against the claim asserted by defendant Kellar against this defendant in said action."

The prayer of Thompson's Answer reads:

"Wherefore, this defendant prays for a decree of this court adjudicating as follows:

"1. That at the time and place of the accident involved herein, the defendant Kellar was either a farm employee of this defendant, or was engaged with this defendant in a joint venture for their mutual profit and gain;

"2. That either policy No. T-2950-70, which is a part of plaintiff's complaint, insures this defendant for the claim of the said defendant Kellar, or plaintiff's insurance policy T-295011, covering the truck above referred to, protects and insures this defendant for the claim of the defendant Kellar;

"3. For such other and further relief as to the Court may seem mete and equitable."

The reply filed by the plaintiff admitted that Kellar was an employee of Thompson, but denied that he was "a farm employee engaged in farm employment or engaged in a joint venture for the mutual

profit and gain of the defendants." The reply also alleged:

"* * * the said policy of insurance insuring the truck previously described herein contains the following exclusion:

" 'This policy does not apply; . . . . . (e) Under bodily injury and medical payments coverages

(1) to bodily injury to any employee of the insured while engaged in the employment of the insured;

(2) to any obligation for which the insured or any company as his insurer may be held liable under any workmans' compensation, unemployment compensation or disability benefits law, or under any similar law.' "

It is seen from the foregoing that the plaintiff (insurance company) conceded that the policy of insurance which the complaint describes imposed upon it the duty to defend Thompson if Kellar sustained his injury while working as a farm employee for Thompson, but denied that Kellar was working as a farm employee at the time of his injury. It alleged that he was working as a logger and that the policy did not require it to defend Thompson upon claims arising out of injuries sustained in logging work. Thompson's answer agreed that it was the plaintiff's duty to defend him upon claims from injuries received by employees who were performing farm work. Thompson seemingly was unwilling to take a stand upon the issue as to whether Kellar was a farm employee or a logger. His answer never uses the word "logger" in referring to Kellar. In mentioning him at the time of his injury, it says: "At said time the defendant Kellar was either a farm employee of this

defendant or was engaged with this defendant in a joint venture for their mutual profit and gain." Thompson's answer made no direct averment that Kellar was injured while doing farm work. The nearest he came to anything of that character was to allege, "defendant Kellar was either a farm employee of this defendant or was engaged with this defendant in a joint venture for their mutual profit and gain." Thompson offered no explanation for his resort to alternative pleading. He worked day by day alongside of Kellar and was so engaged at the moment when the injury occurred. In fact, it was his application of power to the mechanical equipment that was hauling the logs to the truck that caused the log to flip over and injure Kellar. If Thompson did not know whether Kellar was a farm employee or a joint venturer, it is impossible to understand how the trial judge could discover what the situation was. *Kornbrodt v. Equitable Trust Co.*, 137 Or 386, 2 P2d 236, 3 P2d 127, quoted approvingly the following:

> "Such pleading is bad under any system of practice when it states material facts in the alternative, so that it is impossible to determine upon which of several equally substantive averments the pleader relies for the maintenance of his action or defense."

However, in *Turney v. Southern Pacific Co.*, 44 Or 280, 75 P 144, 76 P 1080, where the pleader could not know which of the alternatives was the truth, but his adversary had the facts, alternative pleading was permitted.

Since no issue is presented concerning Thompson's resort to alternative allegations, we will attach no importance to it. However, it is difficult to understand how Thompson, upon filing his petition for a

rehearing, could be confident that Kellar was injured while performing farming work and yet not know, when he filed his answer, whether Kellar sustained his injury while performing logging or farming work.

Thompson does not claim that the policy which the complaint describes protected him if Kellar and he were engaged in a joint venture, but indicates that the truck policy (described in the answer) afforded him protection in such a situation. We have read it and have found no provision of that character. Thompson's brief cites none.

Thompson presented evidence which in one of its phases tended to show that Kellar was a farm laborer, and in another of its phases showed that he and Kellar were engaged in logging operations. He brought to the trial and secured the reception into evidence of bookkeeping records which he contended established that he and Kellar were joint venturers. As our original opinion shows, those records indicate—when we add to the sum which Thompson paid Kellar for farm labor other amounts which he paid Kellar for "chores"—a total of only 16.7 per cent of the gross that Kellar received. He received 83.3 per cent for logging work. At the moment of Kellar's injury he was in the presence of power driven logging equipment consisting of such items as a crane, cable, drum and a power driven loader. That equipment was hauling a log onto a logging truck. Thompson claims that he intended to take the log (he called it a tree top) to his home for use as firewood. According to him, the stick was about 14 feet long, 9 inches in diameter on its big end and about 6 inches on the small end. Kellar described it as larger and swore that it would be delivered to the same mill which had purchased other logs produced upon the place. The place in

question was a fraction of a timbered area hundreds of acres in extent which Thompson owned. He and Kellar had, in the preceding days, cut the timber from one and one-half acres of it. Thompson testified that he was terminating logging operations upon the place and that it was his duty to remove the inflamable debris which resulted from the logging. If the log that was being hauled to the truck was, in fact, a log, as Kellar insisted, the conclusion is inevitable that at the time of his injury Kellar was engaged in logging work. But, if it was a tree top, then the only appropriate conclusion that can be drawn is that Thompson was performing his duty as exacted by statute and was removing the inflamable debris. The place to which he took the debris, if such was its nature, would not render its removal farming work.

Kellar gave the following testimony:

"Q Was there any farming being done in the particular area where this logging operation—where you were hurt—where this took place?
"A No."

There is no evidence to the contrary. Thompson had styled himself in such important documents as his Federal Income Tax Return as a logger. As a witness he described himself as a tree farmer.

It will be recalled that Kellar received from the Industrial Accident Commission an award of compensation upon a contention that he worked for Thompson as a logger. The plaintiff viewed the award as res judicata of the issue. Thompson seemingly contended that the court should have ruled that any damages which Kellar might recover in his action against him (Thompson) should be offset by the amount of compensation which the Commission had paid Kellar, or

that Kellar's receipt of compensation prevented him from maintaining the damage action.

Thompson presented numerous receipts signed by Kellar and checks signed by himself, each of which stated that the sum was for "my share of logs." He nowhere testified that he paid Kellar any wages. He seemed very anxious to make it appear that Kellar was his partner. Upon one check that he gave to Kellar he wrote, "This check is a loan to my partner in our partnership, to help keep groceries in home." Kellar protested that he was not a partner and that he never received anything as a partner. The words "my share of logs" were written upon the papers by Thompson or his wife who helped him with his records. Thompson presented no paper bearing Kellar's signature which indicated that Kellar had received any wages for farming work. The phrase "my share of logs," according to Thompson, supported his contention that he and Kellar were engaged in a joint logging venture. He claimed that in addition to himself and Kellar, one of his brothers and a cousin were members of the venture. The Industrial Accident Commission, after the hearing which it conducted and in the course of which Thompson testified, ruled that Kellar suffered his injury while working as a logger and that he was entitled to compensation.

Kellar testified that he and Thompson had felled trees in the area and that at the time of injury there was a full "load of large logs left." Immediately prior to his injury he had been engaged in building for Thompson a short stretch of fence for which he was paid one dollar an hour. Then Thompson came for him with the logging truck and asked him to load the truck with the logs just mentioned. Regular power driven machinery, commonly employed by loggers in

loading logs upon trucks, was used in loading the truck.

No one denies that a court of equity had jurisdiction or power to construe these two policies of insurance. The construction of instruments occurs daily in courts of that character and, according to Borchard, Declaratory Judgments, page 240, courts of equity are well adapted for rendering service of that nature. In the present instance, both the plaintiff and Thompson prayed the court of equity to construe the policy mentioned in the complaint. In addition, the defendant's answer prayed for a construction of the policy (truck) which it alleged.

■ It is well established by the decisions of this court and the holdings elsewhere that a party, through failure to make timely protest, may waive his objection to the lack of jurisdiction of a court of equity over the subject matter if the court's jurisdiction is defective in some degree but not wholly lacking.

We quote the following from 21 CJS, Courts, § 109, page 165:

"Objections to lack of jurisdiction of the person, and other objections to jurisdiction not based on the contention that there is an absolute want of jurisdiction of the subject matter, are waived by invoking the court's jurisdiction, as by a cross bill or counterclaim, consent, or voluntary submission, to jurisdiction, or conduct amounting to a general appearance, or objecting to the jurisdiction of the subject matter, failing to raise the question of jurisdiction in the proper manner, seeking relief on a ground additional to, or other than, want of jurisdiction, appealing, or by any other conduct indicating an intention to abandon or forego the objection."

It will be recalled that Thompson's answer alleged

the policy of truck insurance, prayed for its construction and for general equitable relief.

The following is taken from *United States National Bank of Portland v. Erickson and Terteling & Sons,* 208 Or 141, 300 P2d 449:

"Objections relating to whether the cause is triable at law or in equity should be made in the trial court, and, unless the issues raised are wholly beyond the jurisdiction of a court of law or equity, the unchallenged ruling of the trial court determining upon which side of the court the matter lies, acquiesced in by the parties, will not be reviewed on appeal. Flaherty v. Bookhultz, 207 Or 462, 297 P2d 856; Ward v. Town Tavern et al., 191 Or 1, 228 P2d 216, 42 ALR (2) 662; United Brokers Co. v. Dose, 143 Or 283, 22 P2d 204; Topolas v. Skotheim et al., 126 Or 683, 250 P 235, 270 P 753."

It will presently appear that the trial judge made an unchallenged ruling that this cause was equitable and that Thompson acquiesced in the ruling.

*United Brokers Co. v. Dose,* 143 Or 283, 22 P2d 204, holds:

"There is some controversy as to whether this is an action at law or a suit in equity but, in view of the fact that no objection was made to the forum in which the case was tried, we pass the same without further comment."

In *Topolos v. Skotheim,* 126 Or 683, 250 P 235, 270 P 753, Mr. Justice McBRIDE stated:

"* * * It does not follow that the court in administering equity is precluded under proper circumstances from rendering a money judgment. Nor does it follow in every case that a court will refuse relief because there seems to be no other way of reparation except by rendering a money judgment, and this is especially the case since the passage of Section 390, Or. L., which provides:

" 'No case shall be dismissed for having been

brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account.'

"In the case at bar there was no demurrer to the complaint and no plea of the jurisdiction of the court in any shape. The case was tried until all the testimony was in as though the pleadings had been absolutely perfect, but at the end of the testimony a motion was made to dismiss for want of jurisdiction in equity.

"There was no application to compel plaintiff to amend his pleadings, but only a request that the court should do exactly what the statute says the court shall do, namely, to dismiss the case, although defendants were undoubtedly aware, and could not have been unaware, of the fact of their reconveyance of the hotel lease to another party, and whether or not such conveyance was anything but colorable. They knew the inside facts of the transaction much better than this ignorant Greek whom they were defrauding, and were in a position to have taken advantage by answer in the first place if they had desired to do so, or by demanding a jury after the facts had been fully disclosed in the evidence. We are not disposed to consider this technical objection with any degree of patience. * * *"

*Lewis v. Shook and Lee,* 185 Or 67, 201 P2d 908, states:

"Lee, by his brief in this court, raises these questions as against Shook: (1) There is no fact alleged by the pleadings upon which damages for fraud may be allowed; (2) as to such damages, Lee is entitled to trial by jury; (3) procedure under the declaratory judgments statute may not be used for what is in effect an ordinary damage action, especially one based on fraud. In view of our disposition of the case, we find it unnecessary to discuss any of these questions, except for (3). As to that, the elimination of Lewis from the case con-

verts the issues, as between Shook and Lee, into what amounts to a suit for specific performance by Lee, with a counter-claim by Shook that he is entitled to damages, to be applied in reduction of the purchase price, in respect of Lee's alleged fraudulent representations. In praying for a decree of specific performance, Lee submitted to the equitable jurisdiction of the court, and cannot now urge the jurisdictional question. Oldenburg v. Claggett, 142 Or 238, 241, 20 P.2d 234; Bottemiller v. Ball, 130 Or. 255, 262, 279 P. 542, 69 A.L.R. 951; Jensen v. Probert, 174 Or 143, 158, 148 P.2d 248; Mogul Transportation Co. v. Larison, 181 Or. 252, 259, 181 P.2d 139."

*Flaherty v. Bookhultz,* 207 Or 462, 291 P2d 221, 297 P2d 856, ruled:

"* * * It is true that plaintiff might have proceeded at law by an action for money had and received, and in such action could have had an accounting and a discovery, but in the absence of a demurrer or other objection by defendants to the jurisdiction of equity on the ground that plaintiff had a plain, speedy, and adequate remedy at law, defendants must be deemed to have waived their objections to equitable jurisdiction. However, we do not wish to be understood as saying that parties may confer jurisdiction in equity upon agreement between themselves, either expressly or impliedly. That is not the situation in this case. We note in passing that on the original hearing in this court neither party, in his brief or on oral argument, advanced the theory that equity did not have jurisdiction in this matter. * * *"

If a court of equity was wholly lacking in jurisdiction over this cause, and we do not believe that such was the case, that fact was apparent upon the face of the complaint, and was as manifest to Thompson when he was served with the complaint as it was

when he wrote his petition for a rehearing. ORS 16.260 provides:

> "The defendant may demur to the complaint within the time required by law to appear and answer, when it appears upon the face thereof:
>
> "(1) That the court has no jurisdiction of * * * the subject of the action; * * *"

Thompson did not challenge the jurisdiction of the court of equity over this cause by demurrer or in any other manner. The complaint alleged fully the controversy and made it clear that the relief which the plaintiff sought was a decree. The court of equity's jurisdiction could have been challenged by demurrer.

*Hudson v. Goldberg,* 123 Or 339, 262 P 223, states:

> "It is settled law in this state that an objection to the jurisdiction in equity in the absence of a demurrer on the ground that plaintiff has a plain, adequate and complete remedy at law comes too late, after the defendant has by his answer put himself upon the merits, where the pleadings suggest no such defense: Kitcherside v. Myers, 10 Or 21; State v. Blize, 37 Or 404 (61 Pac 735); O'Hara v. Parker, 27 Or 156 (39 Pac 1004); Bowsman v. Anderson, 62 Or 431 (123 Pac 1092, 125 Pac 270); Nicholas v. Title & Trust Co., 79 Or 226 (154 Pac 391, Ann Cas 1917A, 1149). In Bowsman v. Anderson, supra, an exception to the rule just stated was recognized, wherein this court said:
>
> "'* * * But a distinction must be made between an entire lack of matter of equitable cognizance and cases within the field of equitable jurisdiction, in which an element essential to complete jurisdiction is lacking. In the former, the objection is not waived by failure to interpose it at the proper time, but it is available at any stage of the proceeding; while in the latter, if the objection is not seasonably interposed, it will be deemed to be

waived. In such a case, the subject of the controversy is equitable, and the relief sought such as equity alone can grant. This distinction is well stated in 16 Cyc., pp. 127, 128, where the authorities are collated. If the case is within the general field of equitable jurisdiction, the absence of any condition which might defeat the jurisdiction, if seasonably raised, may be waived, provided it is competent for the court to grant the relief sought, and it has jurisdiction of the subject matter. The application of the doctrine of waiver in equity cases is practically restricted to cases of concurrent jurisdiction.' "

See to like effect *Barnes v. Eastern and Western Lumber Co.*, 205 Or 553, 287 P2d 929, at page 612.

In *Topolos v. Skotheim*, 126 Or 683, 250 P 235, this court, in sustaining the jurisdiction of the court of equity, stated:

"In the case at bar there was no demurrer to the complaint and no plea of the jurisdiction of the court in any shape."

*Flaherty v. Bookhultz*, 207 Or 462, 291 P2d 221, 297 P2d 856, states:

"* * * but in the absence of a demurrer or other objection by defendants to the jurisdiction of equity on the ground the plaintiff had a plain, speedy, and adequate remedy at law, defendants must be deemed to have waived their objections to equitable jurisdiction. * * *"

The rule stated in the foregoing decisions is in harmony with the rule established in virtually all jurisdictions that employ code pleading. See Phillips Code Pleading, §§ 291, 292; 41 Am Jur, Pleading, § 213, page 443; and 71 CJS, § 237.

It is manifest that the controversy between the

plaintiff and Thompson, and the relief for which each of them prayed, was not completely outside of the jurisdiction of a court of equity. To the contrary, the relief which they sought was within the scope of equity's powers. By not challenging the jurisdiction of the equity court by demurrer, Thompson must be held to have waived that contention.

Not only must we deem that Thompson waived the lack of the court's jurisdiction (if it in fact lacked jurisdiction), but we must also hold that he tried the case as one in equity and himself invoked equity practice. For example, upon at least two occasions evidence which was ruled inadmissible was nevertheless received under the practice known as "under the rule." The brief filed in this court by the defendant respondent Thompson makes this statement: "Evidence of the foregoing was introduced into evidence 'under the rule' by way of the transcript of the testimony taken before the hearing officer of SIAC." The brief continues:

> "It is not denied by Thompson that Kellar did in fact make application to SIAC for benefits; that Kellar appeared before a hearing officer for SIAC * * *."

Still another part of Thompson's brief states:

> "Thompson's co-counsel, David D. Williamson of St. Helens, Oregon, was called as a witness by defendant Thompson and he was permitted to testify 'under the rule' that no assessment pursuant to ORS 656.054 had been made against the defendant Thompson and that no completed audit of his records had been made by SIAC and further that SIAC had indicated to Mr. Williamson that an audit would not be continued or completed until after December 1, 1961, pending the outcome of 'this litigation.'"

In the brief which Thompson filed in support of his Petition for a Rehearing he took our decision to task because we did not give effect to testimony which the trial judge had excluded but which got into the record "under the rule"; There he says, "this Court apparently overlooked or disregarded the testimony of Mr. Thompson at the hearing before the State Industrial Accident Commission."

From the foregoing we see that in the circuit court, in this court and upon Petition for Rehearing Thompson treated the case as governed by equity practice.

Further showing that the case was tried in the circuit court under equity practice is the incident which we will now mention. After the plaintiff (insurance company) had concluded the presentation of its evidence in chief and had rested, counsel for Thompson moved "the court to enter a decree on the basis of the plaintiff's own evidence and testimony that the Dean Kellar accident was, first of all, covered by the Farmers General Liability policy, or, in the alternative, by the automobile policy on the truck * * *. Without in any way waiving my motion for a decree and findings in favor of the defendant Thompson in this regard, I at this time move the Court to strike from" the complaint one by one some of its averments.

The motion brought an objection that equity practice did not countenance a motion of that character at that stage of the trial. Presently, the trial judge ruled:

> "I think we would save time if I would announce that this is a proceeding in equity and that in my opinion the motion which you have made does not lie. Now in equity, at the close of the plaintiff's case, the only relief that can be granted to a defendant is a motion to dismiss; but while this

is a suit in equity, we are proceeding under a special remedy known as Declaratory Judgment and the Court has the responsibility, as I understand it, to declare something, either in favor of what the plaintiff is asking for or against it. The Court has to end up making some kind of a declaration of rights, and that's particularly true in this case because regardless of what may or may not have been proven at this point, at least there has been evidence proved which invests the Court with jurisdiction of the parties and of this dispute, in my judgment, for a motion to dismiss to apply."

At that point counsel for defendant Thompson made no objection whatever to the trial judge's interpretation of the nature of the case and the practice which governed it. To the contrary, he acquiesced in it by changing his motion. Then came this ruling:

"Very well. Then I will also announce that I would deny your several motions for relief, as to the allegations in the pleadings. I see no useful purpose served in an equity case for doing that. * * *"

The instrument which terminated this proceeding and from which the appeal is taken was prepared by Thompson's counsel and was labeled "Decree." We have also seen that upon appeal Thompson asked this court to employ equity practice and deem that evidence which was received in the circuit court "under the rule" is actually before us. Moreover, the disclosure that Thompson had neglected to remit to the Industrial Accident Commission and that Kellar was receiving compensation from that source rendered it the duty of the court of equity to decree a lien in the commission's favor upon Kellar's cause of action against Thompson. Both parties asked the court of equity for judicial service which it had the power to render. No

objection was made to the course delineated by the trial judge, as to the practice he was employing. He ruled that the cause was triable under equity procedure.

■ In taking our position we do not depart from the rule that parties cannot confer jurisdiction upon a court by stipulation. But if a party remained silent when he should have spoken, he may thereby become estopped from questioning jurisdiction unless the subject lies wholly beyond the court's jurisdiction. Any other rule would enable a party—wittingly or unwittingly—to mislead the trial judge when he makes a ruling as to jurisdiction and procedure and likewise to mislead this court when it later studies the record. In the present instance the trial judge's ruling was, as we have seen, crucial. When the trial judge made the quoted ruling and when this court read the transcript each was warranted in believing that Thompson concurred in it. An inference to that effect was fortified by the attitude he displayed at other times which we have mentiond, as, for example, when he labeled the jural instrument which terminated the case a "Decree." So far as this court is concerned, it was further confirmed when Thompson treated as evidence properly before us testimony that the trial judge had rejected but which came into the record "under the rule." Parties must be frank and timely disclose their position. They must voice exception to a ruling with which they do not agree, or, in the absence of something which justifies silence, be deemed as acquiescing. We should have the right to infer from the action of the defendant that he deems a cause equitable in nature if:

1. He does not challenge the jurisdiction of the court by demurrer although the complaint is

phrased upon the premise that it is equitable in nature;

2. He prays in his answer for (a) a construction of a writing which the answer quotes, (b) a "decree," and (c) such other and further relief as the court may deem mete and equitable;

3. He employed in the trial court procedure that only a court of equity affords;

4. He heard the trial judge, as the basis for his decision, make in unmistakable language a ruling that the case is equitable without in any manner questioning the ruling or denoting lack of acquiescence in it.

5. Upon hearing a ruling that the case was equitable, he thereupon modified a pending motion;

6. In preparing the final jural instrument which terminated the case, he labeled it "Decree";

7. Upon writing his brief for this court he proceeded in accordance with equitable practice and treated as admitted evidence which the circuit court had received only "under the rule";

8. Upon his petition for rehearing, he treated the case as equitable;

9. The case was not foreign to a court of equity's powers; and

10. No relief was given that lay beyond the powers of a court of equity.

If it could be said that no one of those component parts could in itself suffice to show that the party, who thus conducted himself, treated the case as equitable, it must be borne in mind that in this case Thompson embraced all of those component parts and did so throughout the case.

We have no thought of encouraging insurance companies to resort to declaratory judgment proceedings as a means of bypassing trial by jury. But those who wish trial by jury must not sit mute in the trial

court and keep their thoughts to themselves. They should not postpone their demands until they reach this court. We abide by the rule expressed in *United States National Bank v. Erickson and Terteling & Sons,* supra, and in the other cases which hold that if the jurisdiction of the court can be readily challenged by a demurrer, a failure to do so will be deemed a waiver unless the court was wholly lacking in jurisdiction.

We adhere to our former opinion.

PERRY, J., concurs.

McALLISTER, C. J., specially concurring.

I concur in the result of the majority opinion, but wish to limit the grounds of my concurrence.

In my opinion this declaratory judgment proceeding was legal in nature, and the defendant Thompson was entitled to a resolution of the questions of fact as in an action at law. In this respect I agree with the dissenting opinion and the authorities cited therein. The majority opinion seems to equivocate as to the nature of the proceeding and expresses doubt that it is legal in nature. In that regard I disagree with the majority opinion.

I do agree that Thompson's conduct in treating the case in the trial court as an equitable proceeding, in failing to assert in the trial court his right to have the case treated as an action at law, and his acquiescence in the ruling of the trial court that the case was equitable, preclude him from now asserting that the questions of fact should have been decided as in an action at law.

I believe the questions of fact were properly re-

examined and decided in our original opinion. I, therefore, concur in the result of the majority opinion.

Goodwin, J., concurs in this opinion.

DENECKE, J., dissenting.

The trial court made a finding of fact that Dean Kellar, the injured employee, was a "farm employee" at the time of his injury. In the original decision of this court it was held that Kellar was not a farm employee at the time of his injury; rather, he was a logger. A finding that Kellar was not a farm employee at the time of the accident removes from the coverage of the plaintiff's policy any liability of the defendant Thompson for Kellar's injury.

The majority opinion decides that this is in nature an equity proceedings; therefore, this court can retry the facts.

There was ample evidence to support the trial court's finding. Thompson testified that at the time Kellar was injured he was hauling tree tops from Thompson's property to Thompson's house, where they were to be used as stovewood. Mrs. Thompson's and Mr. Velliquette's testimony corroborated Thompson's testimony in this regard. Kellar admitted that he was being paid, at the time he was injured, one dollar per hour. All the testimony was that when Kellar was logging for Thompson he was paid per cord or per 1,000 board feet cut. However, when he was doing farm work for Thompson he was paid one dollar per hour. On the Thompson property 10 to 12 cows, plus their calves, were grazed. Thompson previously had chickens, rabbits, burros and goats. He had raised hay but now used this land for pasture.

Therefore, the question is squarely raised,—is a declaratory judgment proceedings with issues such

as raised here to be regarded as a suit in equity with all the incidents of an equity proceedings, including the right of this court to try the facts de novo?

The declaratory judgment statute reads:

"When a proceeding under this chaper involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other actions at law or suits in equity in the court in which the proceeding is pending." ORS 28.090.

*Consolidated Freightways, Inc. v. Flagg,* 180 Or 442, 453, 176 P2d 239, 177 P2d 422, quoted with approval from Borchard, Declaratory Judgments (2d ed), 239, as follows:

"* * * in principle declaratory relief is *sui generis* and is as much legal as equitable. * * *"

And from Anderson, Declaratory Judgments, 160, § 56, as follows:

"The only sound position that can be taken with respect to such classification [i.e., whether declaratory judgments actions are strictly equitable or strictly legal] is that it partakes of the properties of both legal actions and suits in equity, and that the court will apply the rules with respect thereto as the nature of the case seems to demand; that at times a declaratory judgment action may properly be classified as legal, carrying with it the attendant right to a jury trial; and that at other times, it may correctly be designated as a suit in equity, warranting the issuance of an injunction, and authorizing the granting of extraordinary relief generally."

The United States Supreme Court recently amplified these general propositions. *Simler v. Conner,* 372 US 221, 83 S Ct 609, 9 Led2d 691, was a declaratory judgment proceedings. In holding that the petitioner

had a right to a jury trial the Per Curiam opinion states:

> "On the question whether, as a matter of federal law, the instant action is legal or equitable, we conclude that it is 'legal' in character. The record discloses that the controversy between petitioner and respondent in substance involves the amount of fees petitioner, a client, is obligated to pay respondent, his lawyer. Petitioner admits his obligation to pay a 'reasonable' fee under a contingent fee retainer contract stipulating that reasonableness may be set in a court trial. Respondent relies on a subsequent contract specifying 50% of the recovery, under certain circumstances, as the amount of the fee. Petitioner counters that the latter contract is the product of fraud and overreaching by the lawyer.
>
> "The case was in its basic character a suit to determine and adjudicate the amount of fees owing to a lawyer by a client under a contingent fee retainer contract, a traditionally 'legal' action. See Trist v. Child (Burke v. Child) (US) 21 Wall 441, 447, 22 L ed 623; Stanton v. Embrey, 93 US 548, 23 L ed 983. The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instruction as petitioner requested." (9 L ed2d at 693)

This question of whether a declaratory judgment proceedings is in law or equity most frequently arises in determining whether or not a party is entitled to a jury trial to resolve disputed questions of fact. Many of these cases are proceedings by insurance companies against their insureds seeking an interpretation by the court of the policy coverage for a particular claim. In every one of these cases, numbering about 25, the appellate court has determined that the

basic character of the proceedings is legal and, therefore, there is a right to a jury trial.[①] *United States F. & G. Co. v. Spring Brook Farm Dairy,* 135 Conn 294, 64 A2d 39, 13 ALR2d 769, is the one exception. The Connecticut court reasoned that its constitutional right of trial by jury does not apply to actions not existing in 1818, the date of the adoption of the Connecticut Constitution.

In *Pacific Indemnity Co. v. McDonald,* 107 F2d 446 (9th Cir 1939), 131 ALR 208 (arising in Oregon), a passenger was injured while riding with the insured. The passenger sued her host, the insured. The host's insurance company brought a declaratory judgment proceedings against its insured and the injured passenger. It alleged that the passenger and the insured were conspiring to procure a judgment against the insured driver and the insured breached the condition of the policy by giving false information to his insurance carrier and by failing to cooperate with it. The court viewed the situation as follows:

"\* \* \* In the case at bar we have an appellant who has executed an insurance policy and who anticipates that an action will be brought upon that insurance policy by the person insured or by an injured person subrogated to his right. The insurance company claims that it has a just defense to this action arising out of the conduct of the insured person and also of the injured person. The issue of fraud and collusion for the purpose of obtaining a judgment by the injured person against the insured is in legal effect no more than an allegation of noncooperation. In the absence of the insurance policy and its agreement for cooperation the insured would have a perfect right to confess

[①] The cases are collected in 13 ALR2d 777, §§ 7, 12. More recent is Temperance Insurance Exchange v. Carver, 83 Idaho 487, 365 P2d 824.

judgment in favor of the injured person regardless of whether or not there was any legal liability for the injury. It follows from what we have said that we simply have a situation herein where a party who has issued a policy of insurance anticipates a suit thereon by the insured or one subrogated to his rights and to avoid delay brings the matter before the court by petition for declaratory relief. *In such a proceeding, although the parties are reversed in their position before the court, that is, the defendant has become the plaintiff, and vice versa, the issues are ones which in the absence of the statute for declaratory relief would be tried at law by a court and jury.* In such a case we hold that there is an absolute right to a jury trial unless a jury has been waived. * * *" (Emphasis added.) (107 F2d at 448)

*Dickinson v. General Accident F. & L. Assur. Corp.,* 147 F2d 396 (9th Cir 1945), is another case involving the same type of facts, i.e., a liability insurance carrier bringing a declaratory judgment proceedings against its insured seeking a determination that there was no coverage. This court approved that case and the quote therefrom, as follows:

" '* * * In the absence of the procedure for declaratory relief it is plain that the issues here litigated could have been developed only in an action at law on the policy. A party may not, merely by reversing the normal procedure, deprive his adversary of the right which would otherwise be his to have his case determined by a jury. * * *.' " *Lewis v. Miller,* 197 Or 354, 361, 251 P2d 876.

One of the normal procedures referred to in the above quotation is for the injured party, here, Kellar, to secure a judgment against the insured, here, Thompson. Kellar could then garnish Oregon Farm Bureau. This is a type of law action and the issues of fact are

tried "as upon the trial of an issue of fact between a plaintiff and defendant." ORS 29.350; *Eisele v. Knight,* 234 Or 468, 382 P2d 416. Another common procedure is for the insured to pay the judgment and bring an action against his insurance company, here, Oregon Farm Bureau, on the policy. This would obviously be a straight law action on a contract.

If one is entitled to a jury trial on the issue of fact in such a declaratory judgment proceedings it logically follows that one is also entitled to have the trial judge's findings of fact be conclusive if there is any evidence to support such findings.

All the precedents, with the one exception noted, regard a declaratory judgment proceedings involving the issue of insurance coverage, such as presented here, as one to be considered as a law action.

While the majority opinion doubts that this proceedings should be considered as having the basic characteristics of a law action, it primarily rests upon the proposition that the defendant Thompson treated it as an equitable proceedings, and thereby waives any right to now demand that it be treated as having the basic characteristics of a law action.

The majority opinion quotes from *U. S. Nat. Bank v. Erickson,* 208 Or 141, 300 P2d 449, and *United Brokers Co. v. Dose,* 143 Or 283, 22 P2d 204, to the effect that if a party does not object to the matter being tried as a suit in equity he cannot contend upon appeal that it is an action at law. *Maxwell v. Frazier,* 52 Or 183, 96 P 548, 18 LRA (NS) 102, contains a complete statement of this problem. It involved an attempt by the plaintiff to file an interpleader suit, joining as defendants two parties who claimed the fund under separate contracts. "In this suit defendants did not question plaintiff's right to the bill [in equity], but

proceeded to join issues against him as to his contractual relations; * * *." (at 191) Nevertheless, the court refused to assume equitable jurisdiction and stated:

"There is an entire absence of matter of equitable cognizance in the case before us; nor is the relief sought such as is peculiar to equity, and to entertain jurisdiction and grant the relief that the facts might disclose to be proper would be to assume jurisdiction of an issue, purely legal, because not questioned by the defendant at the proper time. * * *." (at 190-191)

Assuming it is possible to confer equitable jurisdiction upon this court by failure to object thereto or by waiver, it is my opinion that this has not been done.

The majority opinion points to the following as evidence of acquiescence or waiver:

(1) Defendant prayed for equitable relief. As seen from the complete prayer, quoted in the majority opinion, the only portion sounding in equity is the "catch-all," "3. For such other and further relief as to the Court may seem meet and equitable." This exact "catch-all" prayer for equity was made in *Flaherty v. Bookhultz*, 207 Or 462, 467, 291 P2d 221, 297 P2d 856. The court said, "But the prayer is not part of the cause of suit or of action, and therefore this phrase can add no strength to a claim for equitable jurisdiction."

(2) The judgment prepared for the court's signature by the defendant was captioned, "Decree." The statute refers to the declaration that the court makes as either a "judgment or decree." ORS 28.010 et seq. It may be that the statute has in mind the use of "decrees" only in proceedings sounding in equity. My belief is that the usual practice in this jurisdiction is to designate the paper in which the court makes its

official declaration of the rights of the parties as a "decree"; and this without thought to whether the proceedings had the basic characteristics of law or equity. This practice may be the result of frequent pronouncements of this court that declaratory judgment proceedings are controlled largely by equity practice. Such pronouncements I consider as pertaining to minor and incidental matters of practice, such as whether the paper should be entitled, "Judgment" or "Decree"; or whether it is a "suit for a declaratory judgment" or an "action for a declaratory judgment."

(3) When the trial court announced that it considered this as a proceedings in equity the defendant did not object thereto. One does not object to the pronouncements of the court. One objects to actions attempted by another party. If the court rules adversely, no objection or exception is necessary except to instructions given to the jury.

(4) The defendant did not ask for a jury trial or that the case be tried as one at law. To my knowledge it has never been held that a failure to do either waives a party's right to contend that the proceedings are to be considered as a law action or indicates that the party considers the proceedings in the nature of a suit in equity.

(5) At the close of plaintiff's evidence, defendant Thompson moved to dismiss. The trial court stated that it considered this similar to a proceedings in equity and, therefore, it would not consider the motion unless the defendant was willing to rest and put on no more evidence. The defendant was unwilling to do this; so the defendant's motion to dismiss was not passed upon by the trial court. The defendant could have, by oral argument, attempted to persuade the trial court to change its mind. However, I know of no

principle of law that if one does not argue with the trial court's ruling, one thereby acquiesces in it.

(6) After the trial court's statement that it believed equity procedure would govern the proceedings, the defendant, on one occasion, offered evidence which had been excluded "under the rule." The plaintiff had previously done this on one occasion. The defendant offered it "under the rule" at the court's suggestion: "You may take it under the rule if you wish." Admittedly, taking evidence "under the rule" is a procedure peculiar to equity. The "rule" is in the form of a statute and is to enable this court to consider, in trying the facts de novo, evidence which it has found the trial court excluded in error. See ORS 17.045; *Sutherlin v. Bloomer,* 50 Or 398, 93 P 135. The procedure in this proceedings, without a jury, would have been exactly the same if the testimony given had been termed an "offer of proof" as it would have been termed in a law action. This conduct of defendant's counsel is inconsistent with his present position, but it was of no consequence.

(7) The defendant in his respondent's brief and his brief in support of his petition for rehearing urged this court to consider testimony not received by the trial court but in the record as taken "under the rule." In so doing the defendant was not urging that we re-examine any fact found by the trial court. The defendant also does not urge that such excluded evidence was improperly excluded. Therefore, this court would not consider it whether it was taken under the rule or as an offer of proof.

This type of argument in the briefs is inconsistent with defendant's position. It occurs, however, in conjunction with defendant's positive argument in both briefs that this is in the nature of a law action and

the trial court's findings are conclusive. This makes it appear that it was a matter of inadvertence rather than an intentional relinquishment of a known right.

(8) Defendant failed to demur and challenge the jurisdiction of the court of equity. A demurrer on this ground would have been overruled and properly so. The complaint stated a cause for a declaratory judgment. It did not invoke jurisdiction peculiar to a court of equity.

If defendant's conduct constitutes a waiver of his right to contend this should be treated as a law action, the plaintiff's conduct on appeal likewise constitutes a waiver of its right to contend this is an equity proceedings.

The basis of plaintiff's argument is stated in its opening brief as follows: "The trial court found * * * Dean Kellar was a farm employee. This finding was objected to by the plaintiff, but said objections were denied and counter-findings rejected by the trial court. *This was a proper question of fact for the court to determine.*" (Emphasis added.)

> "The inquiry then is whether or not the exclusions in the endorsement applies [sic].
> "* * * * *
> "It is apparent that Dean Kellar alleges he sustained bodily injury and the court found that said claim arose out of the course of farm employment. It would then appear that the only real question as to the application of Exclusion (c) of the endorsement is whether: 'benefits therefor are payable or required to be provided under any Workmen's Compensation Law.' On this we feel that there is no issue as a matter of law and that the court erred specifically in its Finding X:
> > "'* * * and that the defendant Kellar did not sustain bodily injury or sickness or disease as an employee of the defendant Thompson

where benefits therefor are payable or required to be provided under the Workmen's Compensation Law of the State of Oregon.' "

Defendant's position on this issue of whether Kellar was a farm employee is stated in his brief as follows:

"Thus, in these proceedings the disputed question of fact was whether or not the employee Kellar was a farm employee of the defendant Thompson and was engaged in performing duties incidental to the ownership, maintenance and use of farm premises. The Trial Court's findings of fact in that regard (Finding VI) has the force and effect of a verdict and if the finding is supported by any substantial evidence the Trial Court should be affirmed. * * *"

Defendant's above-quoted contention was not contested by plaintiff in its reply brief.

At the original oral argument plaintiff did not contest the proposition that the trial court's finding that Kellar was a farm employee was conclusive. The plaintiff orally argued:

"* * * The court found that actually this man at the moment was engaged in farm work. This again is something with which we don't have any great quarrel because it isn't too material. * * *

"* * * and this is a legal conclusion on the part of the court and has nothing to do with the findings of fact as such. Even though the findings of fact *when unsupported by any evidence,* of course, are subject to review in this hearing anyway. * * *" (Emphasis added.)

This initial opinion of this court was the first time that the right to review de novo the trial court's finding that Kellar was a farm employee was asserted.

I do not believe it proper, however, to determine the substantive rights of these parties by putting their

respective conduct evidencing waiver into a scale and determining which conduct outweighs the other.

The starting point for a determination of these rights should be that this is a proceedings which has the basic characteristics of a law action. The only reason this court would not continue to regard this proceedings as basically a law action is that the conduct of one of the parties caused the opposing party, the trial court, or this court, to take some action because they were misled by such party's conduct into the belief that it was not basically a law action.

Nothing in the record indicates that anyone was misled or would have done anything in any different way. If the defendant had omitted that part of his prayer for general equitable relief; if the defendant had strongly contested the trial court's pronouncement that the case was governed by equity practice; if the trial court on such protest had either changed its mind and considered it as a law action, or if it did not change its mind; if the defendant had not offered excluded evidence "under the rule" and then requested this court to consider such evidence; if the defendant had labeled the declaration of rights a "judgment" instead of a "decree," nothing would be changed. The plaintiff would not have conducted itself differently in any way. The trial court would not. The results would not be different.

Despite this, the majority conclude that defendant's conduct was of such a character that he is now estopped from contending that this proceedings is what it really is, a law action, and for this reason an otherwise valid judgment in favor of the defendant must be reversed. With this I cannot concur.

SLOAN and O'CONNELL, JJ., join in this dissent.