Argued June 29, affirmed July 18, 1916.

## KONDO v. AYLSWORTH.

(158 Pac. 946.)

**Sales—Executory Contracts—Effect.**

1. A contract to purchase a number of cords of wood on cars or at station, at various prices, which fails to state the time of payment or delivery, is an executory contract under which title does not pass until delivery, and the purchaser could have action only for breach of contract, and not in replevin.

**Trover and Conversion—Acts of Conversion—What Constitutes.**

2. It is no conversion for the purchaser under executory contract of wood, to be delivered at a station, to take such wood as is placed there by the seller, in the absence of notice not to remove it.

> [As to conversion of personal property sufficient to sustain action of trover, see note in 24 Am. St. Rep. 795.]

**Setoff and Counterclaim—When Maintainable—Tort and Contract.**

3. In an action in tort, a counterclaim arising *ex contractu* cannot be maintained.

From Multnomah: Henry E. McGinn, Judge.

Department 1.    Statement by Mr. Justice McBride.

This is an action in trover by T. Kondo and K̄. Kureye against Charles R. Aylsworth and Frank C. Espenhain, partners under the name of Sunnyside Fuel Company, for the taking and conversion of 71 cords of wood of the alleged value of $284.

Defendants answered by general denial, and by way of counterclaim alleged that on May 10, 1913, plain-

tiffs sold and promised and agreed to deliver to defendants on the railroad track at Anderson Station a quantity of wood consisting of 1,000 cords, situated near said station, for the sum of $3.25 a cord for No. 1 wood and $2.75 a cord for No. 2 wood, and that the wood mentioned in plaintiffs' complaint was a portion of the wood so sold to defendants; that between May 10 and June 24, 1913, plaintiffs delivered to defendants 62 cords of said wood, and on the ninth day of September, 1913, they delivered 71 cords, as a part of the total quantity sold to defendants, and that between the fourteenth day of May and the fifteenth day of June, 1913, defendants paid to plaintiffs the sum of $195.50 to apply on the purchase price of said 1,000 cords; that on or about the —— day of September, 1913, plaintiffs repudiated said sale and refused to deliver the remaining portion of said wood so sold to defendants. Then follow allegations of special damage in the sum of $600 by reason of the alleged failure of defendants to deliver the wood, an allegation that the value of the wood delivered and unpaid for is $240.75, and a prayer for judgment against plaintiffs for $359.25.

The answer being put in issue by appropriate denials of the new matter, there was a jury trial, and verdict for plaintiffs for $255.20, with interest from September 5, 1913, and a judgment accordingly, from which judgment defendants appeal, alleging as error the giving of certain instructions excepted to and the refusal of the court to give certain instructions requested.                    Affirmed.

For appellants there was a brief over the name of *Messrs. Kimball & Ringo,* with an oral argument by *Mr. Ernest R. Ringo.*

For respondents there was a brief over the name of *Messrs. Flegel, Reynolds & Flegel,* with an oral argument by *Mr. John W. Reynolds.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1, 2. Before considering the errors alleged it seems proper to consider the nature of the alleged contract. It is claimed by the defendants in their testimony that on the tenth day of May, 1913, they entered into an agreement with plaintiffs to purchase the entire 1,000 cords of wood lying in the woods near Anderson Station, and agreed to pay therefor when delivered on board the cars or piled near the track the sum of $2.75 and $3.25 per cord. When the payments were to be made or in what quantities or at what times the wood was to be delivered does not appear. This is clearly an executory contract, and no title passed to any wood until it was delivered. If it had burned in the woods, the loss would have fallen on the plaintiffs. In case of a failure or refusal to deliver, defendants would have had an action against plaintiffs for breach of the contract, but no action of replevin to recover the wood, because the labor of hauling and piling near the station or placing on the cars were as much a part of the consideration for the price to be paid as the wood itself. So it may be premised that the defendants did not own any part of this 1,000 cords which they claim to have purchased, except such as had been put on board the cars or had been piled alongside of the track with the intent to deliver it to them. If the contract was entered into and the 71 cords which defendants took was part of this wood, defendants, in the absence of notice to the contrary, had a right to assume that it was piled there in pursuance of the contract, and

were not guilty of wrongful taking and conversion by hauling it away; and the court so instructed the jury, saying among other things:

"If you find that the wood was delivered there under an agreement to sell and deliver 1,000 cords of wood, and the defendants took the wood, they in that event had the right to take it, and they may defend upon the ground that it was a delivery of a part of the 1,000 cords, and there was no conversion whatever in the case."

This was, in substance, the same instruction upon that subject that was requested by defendants, which was as follows:

"If you find from the evidence that the plaintiffs entered into a verbal contract with the defendants, by which the plaintiffs were to deliver at Anderson Station for defendants a quantity of wood, and that in fulfillment of that contract the wood, or any portion thereof, was delivered to defendants at Anderson Station, then I instruct you that the taking by the defendants of such wood so delivered would not be unlawful, and there was no conversion of the plaintiffs' property by the defendants, and your verdict should be for the defendants."

3. The second requested instruction was properly refused. The action was in tort, and the authorities agree that a counterclaim arising out of contract cannot be maintained under such circumstances. This was so held in *Loewenberg* v. *Rosenthal,* 18 Or. 178 (22 Pac. 601), and followed in *Krausse* v. *Greenfield,* 61 Or. 502 (123 Pac. 392, Ann. Cas. 1914B, 115). See, also, *Scheunert* v. *Kaehler,* 23 Wis. 523, a case very similar to the one at bar, and *People* v. *Dennison,* 84 N. Y. 272, 280. The latter case also holds that the objection to the sufficiency of the counterclaim is not waived by failure to demur to the answer. In the present case this position becomes still stronger from the fact that,

while the matter pleaded as a counterclaim was not good as such, it constituted a valid defensive answer, and was so treated by the court. There was left in the case just one question to be tried, namely, whether the contract alleged by the defendant was actually made. This was properly submitted to the jury by the instruction above quoted, and by its verdict for the plaintiff it necessarily found that no contract existed.

Taking the instructions as a whole, they fairly presented the law, and were quite as favorable to the defendants as the pleadings and proof warranted.

The judgment is affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON concur.