Motion to dismiss denied October 19, 1926, argued on the merits March 29, affirmed October 9, 1928.

## NICK TOPOLOS *v.* O. H. SKOTHEIM ET AL.

(250 Pac. 235; 270 Pac. 753.)

For the motion, *Mr. Arthur Langguth.*

*Contra, Messrs. Lewis, Lewis & Finnigan* and *Mr. John J. Beckman.*

McBRIDE, C. J.—■ This is a motion to dismiss an appeal, because of the insufficiency of the notice. The notice is entitled: ''In the Circuit Court of the State of Oregon for Multnomah County,'' but does not state what department of said court, and it is plausibly argued that such a description is insufficient. Without reciting the various cases in which this court held notices of appeal to be either sufficient or otherwise, it suffices to say that, as a general rule to which there are no exceptions, if from the notice itself the judgment appealed from can be identified, it will be sufficient in this court.

■ In the present case the appellants Skotheim and Palmer describe the decree as having been rendered on the twenty-third day of March, 1926, and describe *haec verba* the particular part of the decree from which they appeal; and, in addition to this, the docket

number of the case is given as No. K. 6566. It would be idle to say that a judgment so described could not be identified by the record. We have the title of the case, the title of the court, the number of the case on the docket, the date of the rendition of the decree, and that part of the decree itself from which the defendants appeal. We think the notice sufficiently identifies the judgment and there can be no possibility of the respondent being misled.

The motion to dismiss is overruled.

MOTION OVERRULED.

## ON THE MERITS.

This is a suit for the rescission of an exchange of properties upon the ground of fraud. The complaint, which is lengthy, sets up in substance that the plaintiff, Nick Topolos, in October, 1922, was the owner of a hotel lease, together with the furniture, fixtures and fittings therefor, known as the Norris Hotel and situated in the City of Portland; that the defendant J. W. Adams was presumably the owner of a certain farm in Walla Walla County, Washington, having a deed to the same in blank; that the defendant O. H. Skotheim was engaged in the real estate business in the City of Portland, Oregon, and that the defendants J. C. Palmer, Clyde E. Carlos and O. P. Howe were employed by Skotheim as salesmen, and that A. A. Piper was a resident of Walla Walla, Washington, and was interested with the defendants Adams in the sale of the Walla Walla County farm.

The complaint further states that the plaintiff, Nick Topolos, was desirous of selling his hotel lease and had the same listed with Skotheim for sale; that defendant Adams was brought into the Skotheim office by Palmer and listed with the Skotheim Com-

pany his Walla Walla farm for sale, exchange or transfer. The complaint charges that after this listing, Skotheim, Palmer, Carlos and Adams in pursuance with a conspiracy to cheat and defraud plaintiff represented that the property offered by Adams in exchange for the hotel lease consisted of 280 acres hereinafter called the Stewart Ranch; that one half of the acreage was in wheat; that the ranch was leased to a tenant on a five-year lease of which there were three years yet to run on a rental basis of one third of the crop; that said land could and did grow 40 bushels of wheat to the acre and that the house and barn on the Stewart Ranch was worth $3,500; that the ranch had previously been sold for $100 per acre, or a total of $28,000; that Skotheim would pay up all the taxes to date of exchange of said properties; that a mortgage for $1,150 thereon could be renewed or extended to suit plaintiff herein; that defendant Palmer would promptly secure a loan in the sum of $6,000 on said ranch for plaintiff if plaintiff made the exchange of properties then and theretofore proposed; that they and each of them knew said Stewart Ranch and would take plaintiff and show him the ranch; that Skotheim, Carlos, Howe and Palmer had represented to plaintiff that said Palmer was well acquainted with said Walla Walla County lands and well informed concerning them, and relying upon Palmer's superior knowledge and information plaintiff went with Palmer, who was to show plaintiff the said Stewart Ranch, and that upon their arrival at Walla Walla, Washington, said defendants Palmer and Piper drove plaintiff in an automobile approximately 35 miles out of Walla Walla in a northeasterly direction therefrom and stopped at a well appointed,

nicely kept ranch near Alto station with well kept and good buildings, fields in good crop and in good state of cultivation, and informed plaintiff that they were showing him the Stewart Ranch, and which defendants proposed to exchange for plaintiff's said Norris Hotel.

The complaint further states that plaintiff was a stranger and unfamiliar with the country in and around Walla Walla County, Washington, and that these defendants, especially Palmer, Piper and Adams, were very familiar with the said territory and with the Stewart Ranch in particular; that at the time these defendants entered into said conspiracy to defraud this plaintiff the record title of said Stewart Ranch stood in the name of James D. Stewart, a bachelor; that after said defendant Skotheim had suggested, proposed and recommended to plaintiff the aforementioned exchange of the hotel lease, furniture and furnishings for said Stewart Ranch, said defendant Adams came to Portland at the request of defendants Skotheim and Palmer, bringing with him a deed of conveyance for the lands embracing said Stewart Ranch, executed and acknowledged by said James D. Stewart as of date of April 11, 1922, which deed was in blank concerning the name of a grantee and had remained in blank for want of a grantee for a period of seven months, and that it was not until said deed was about to be delivered to this plaintiff that the name of the plaintiff was then and there written in as grantee.

The complaint states at great length that the representations concerning the value of said Stewart Ranch were false, fraudulent and untrue, and were known to be so in the following respects: That the

Stewart Ranch had not been plowed for two years prior to the time of making said exchange of properties; that there was no acreage at all under cultivation or in crop; that there was no one living on the said Stewart Ranch, nor was the same under lease or being farmed by a tenant or by anyone on shares or otherwise; that the land was of such a character as to make it impossible to raise more than ten bushels of wheat to the acre; that the house and buildings on the ranch were not of the value to exceed $100; that the land was not worth to exceed $5 an acre; that the Stewart Ranch never had been sold for $100 an acre or a total of $28,000; that the defendants had not and have not paid the taxes when due or delinquent; that the defendants well knew and neither they, Palmer, this plaintiff or anyone else would or could obtain a loan of $6,000, nor any other sum on said Stewart Ranch; that the defendants and each of them well knew that the well appointed, nicely kept ranch near Alto station in Columbia County, Washington, with its well kept and good buildings, its cultivated fields and growing crops, which defendants Palmer and Piper showed and represented to plaintiff as the Stewart Ranch, was not the Stewart Ranch at all, but in truth and in fact was the Emerson Woods Ranch located approximately thirty miles from the Stewart Ranch; that the showing of said Emerson Woods Ranch to this plaintiff by Palmer and Piper was in the furtherance of the conspiracy in which all of said defendants were engaged to deceive, cheat and defraud this plaintiff out of his said Norris Hotel lease, furniture and furnishings and the statements and representations made to plaintiff by said Piper and Palmer that they were then and at that time

showing him the Stewart Ranch, when in truth they were showing him the Emerson Woods Ranch, were false, fraudulent and untrue and were by them and each of them known to be false, fraudulent and untrue, and were made with intent to deceive and to defraud this plaintiff and did deceive and defraud plaintiff; that upon learning of the falsity of said representations of said defendants, plaintiff rescinded said contract and exchange, and offered to give back to said defendants and to Adams all of the said lands embraced and described in the deed of conveyance given to plaintiff by said Adams, and said defendants and plaintiff demanded of Adams and said defendants restitution of said lease of said Norris Hotel, together with the furniture and furnishings therein which plaintiff had conveyed to said Adams for himself and the other said defendants in exchange for said ranch, but said defendants and each of them refused and still refuse to make restitution thereof, or to pay plaintiff in specie therefor; that at the time said exchange was made, plaintiff paid to said defendant Skotheim as commission in the above transaction the sum of $150 in money and delivered to him (Skotheim) plaintiff's promissory note for $350 due in thirty days, and on or about the fifteenth day of December, 1922, and before plaintiff had discovered the fraud, deceit and conspiracy of defendants as hereinabove alleged, plaintiff paid to said Skotheim on said promissory note an additional sum of $150, leaving an unpaid balance of $200 on said note, and that said note is now in the hands of a third party, who holds same demanding payment, knowing full well that said note was fraudulently obtained from the plaintiff without consideration.

Plaintiff tendered into court and by his complaint offered a deed of conveyance reconveying to Adams all the lands mentioned in the deed to the said Stewart Ranch above described and averred a willingness to return to Adams and the said defendants the consideration received from said defendants for said exchange or trade.

Plaintiff prays for a decree of this court requiring said defendants to reassign to plaintiff the lease of said Norris Hotel, and to execute and deliver to plaintiff a bill of sale of the furniture and furnishings contained in said Norris Hotel at the time plaintiff executed the bill of sale to the defendant Adams, and, if said defendants shall fail for a period of ten days to deliver said assignment of said lease and said bill of sale for said furniture and furnishings to this plaintiff in compliance with the decree of this court, that said decree shall stand as and for an assignment of said lease to this plaintiff and as a conveyance conveying the title to said furniture and furnishings in said Norris Hotel to this plaintiff; or, in case defendants are unable to return to said plaintiff the lease of said Norris Hotel and the furniture and furnishings in said hotel, that in lieu thereof plaintiff shall have judgment or decree against said defendants and each of them in the sum of $12,000, with interest thereon at the rate of 6 per cent per annum from November 8, 1922; that plaintiff have judgment or decree against defendants and each of them in the further sum of $300, with interest thereon at the rate of 6 per cent per annum from the fifteenth day of December, 1922; that plaintiff have a decree of this court canceling, annulling and holding for naught that certain promissory note given by plaintiff to

defendant Skotheim dated November 8, 1922, in the sum of $350, and that plaintiff recover his costs and disbursements herein.

The defendant Adams was served and made default. Skotheim appeared separately and denied all the allegations of plaintiff's complaint except he admitted at the time of the alleged trade that plaintiff was the owner of the hotel lease and fixtures in the building as described in the complaint; that said defendants Palmer and Carlos were associated with and worked with him as business chances and real estate agents, and that defendants Adams and Piper were located in Walla Walla, Washington. Skotheim further plead an application in bankruptcy in the United States court and the decision adjudicating him a bankrupt.

The defendant Palmer answered for himself denying any knowledge of the alleged fraud, and Carlos also answered to the same effect. Defendant Piper was not served.

The court, after a hearing extending over several days, found for the plaintiff practically in accordance with the prayer of his complaint and entered a decree requiring defendants either to reconvey the hotel lease and fixtures described in the complaint, declaring canceled the promissory note described in the complaint, or, alternatively decreed that, if in any case said decree requiring such transfer was not complied with before the thirtieth day of March, 1926, plaintiff should have judgment and decree against defendants Skotheim, Palmer and Adams for the sum of $10,000, with interest thereon at the rate of 6 per cent per annum from November 8, 1922, and

692

further, for the costs and disbursements of the suit. From this decree the defendants appeal.

AFFIRMED.

For appellant O. H. Skotheim there was a brief over the name of *Messrs. Lewis, Lewis & Finnigan,* with an oral argument by *Mr. Arthur H. Lewis.*

For appellant J. C. Palmer there was a brief over the name of *Mr. J. J. Beckman.*

For respondent there was à brief and oral argument by *Mr. Arthur Langguth.*

McBRIDE, J.—█ From the evidence, which is too long to be recited here and which consists of many detached facts, we are clearly of the opinion that the defendants engaged in a barefaced conspiracy to cheat the plaintiff out of his property, and that this was accomplished by one of their number showing to the plaintiff a fine and valuable farm representing it to be the farm which was afterwards transferred by Adams, and that the charge in the complaint is fully made up. The whole transaction is redolent with the odor of fraud and deliberate rascality. It is contended by the defendants that, because Topolos knew when he brought the suit that the hotel property had been conveyed to a third person, this fact divests equity of jurisdiction and that his proper remedy was by an action at law for deceit or for money had and received. It is true Topolos, who was an ignorant man and could neither read nor write, admitted on the trial that he knew the property had been sold to someone, but did not know to whom. This is far from being evidence that he knew that a *bona fide* sale

had been made. The ways of these defendants have been so devious that plaintiff would have been fully justified in believing that the transfer was merely colorable and one of the various artifices used by defendants to avoid the consequences of their fraud, as indeed it may have been.

■ ■ The court gave them a chance to get hold of the property and return it which was administering good and substantial equity. It does not follow that the court in administering equity is precluded under proper circumstances from rendering a money judgment. Nor does it follow in every case that a court will refuse relief because there seems to be no other way of reparation except by rendering a money judgment, and this is especially the case since the passage of Section 390, Or. L., which provides:

"No case shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account."

In the case at bar there was no demurrer to the complaint and no plea of the jurisdiction of the court in any shape. The case was tried until all the testimony was in as though the pleadings had been absolutely perfect, but at the end of the testimony a motion was made to dismiss for want of jurisdiction in equity.

■ ■ There was no application to compel plaintiff to amend his pleadings, but only a request that the court should do exactly what the statute says the court shall not do, namely, to dismiss the case, although defendants were undoubtedly aware, and could not have been unaware, of the fact of their reconveyance of the hotel lease to another party, and

whether or not such conveyance was anything but colorable. They knew the inside facts of the transaction much better than this ignorant Greek whom they were defrauding, and were in a position to have taken advantage by answer in the first place if they had desired to do so, or by demanding a jury after the facts had been fully disclosed in the evidence. We are not disposed to consider this technical objection with any degree of patience. The fact that Skotheim had secured a discharge in bankruptcy did not exonerate him from any responsibility on account of fraud or misrepresentation.

The decision of the Circuit Court is eminently just and is affirmed. AFFIRMED.

RAND, C. J., and ROSSMAN, JJ., concur.

COSHOW, J., not sitting.