Argued September 10, reversed December 31, 1970

# TRANSPORTATION EQUIPMENT RENTALS, INC., *Respondent, v.* OREGON AUTOMOBILE INSURANCE COMPANY, *Appellant.*

478 P2d 620

*James L. Sutherland*, Portland, argued the cause for appellant. With him on the briefs were Morrison & Bailey and Thomas S. Moore.

*Frederic P. Roehr*, Portland, argued the cause for respondent. On the brief were Vergeer, Samuels, Roehr & Sweek.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and MENGLER, Justices.

McALLISTER, J.

A log loader owned by plaintiff and insured by defendant was destroyed and plaintiff in this action recovered judgment on the policy for the value of the loader. Defendant appeals.[1]

Defendant contends that it was wrongfully denied a jury trial, that the court erred in finding for the plaintiff and also erred in awarding attorneys' fees to plaintiff.

The trial court made only general findings, but there was evidence from which it could, and evidently did, find the following facts, most of which were not in dispute. Plaintiff owned a Skagit Mobile Loader located at Medford, which it arranged to lease to Ross and Millsap Logging Company for use in the lessee's logging operations in Trinity County, California. On June 14, 1966, the Oregon Automobile Insurance Company, through its agent Leonard R. Toates, dba Van Doren Agency, issued a binder insuring the loader for a period of seven days against all physical loss. The binder was issued at plaintiff's request and named Ross and Millsap Logging Co. as the insured and plaintiff Transportation Equipment Rentals, Inc., as "Mortgagee-Payee." On June 17, 1966, while plaintiff was enroute with the loader to Ross and Millsap in California it overturned and was destroyed.

---

[1] Leonard R. Toates, dba Van Doren Agency was also named defendant in this case; the trial court entered judgment for Toates and no appeal has been taken from that portion of the judgment. We will, therefore, refer to Oregon Automobile Insurance Company as "defendant".

We will first consider defendant's claim that it was denied a jury trial. The case was tried by the court without a jury as a result of the following sequence of events. The original complaint clearly stated a cause of action on the insurance binder. Prior to trial plaintiff filed an amended complaint, alleging, inter alia, that through a mutual mistake plaintiff had been designated in the binder as a "loss payee" instead of an "additional insured," praying that the binder be reformed by naming plaintiff as an additional insured and that it have judgment for the value of the loader.

The case came on for trial during the late afternoon of February 13, 1969. It was apparently assumed by both the parties and the court that the amended complaint stated a cause of suit in equity. The plaintiff offered in evidence the depositions of four witnesses, several exhibits, and rested its case. The judge then adjourned court until the following morning so that he could read the depositions and exhibits.

When court convened the next morning plaintiff was permitted to reopen its case to offer additional testimony from one of the witnesses whose deposition had been previously received in evidence. Plaintiff was also permitted to file a second amended complaint which alleged that "through mistake" plaintiff was designated as a loss payee in the binder instead of as an additional assured and contained, instead of a prayer for reformation, only a simple demand for a money judgment.

During these proceedings defendant's attorney pointed out that the case had started as a suit in equity and stated that if the case was no longer an equity matter defendant was "entitled to" and "would want" a jury. This equivocal statement is the basis of defendant's claim that defendant was denied a jury trial.

We think that the defendant was obliged to decide for itself whether it was defending a law action and, if so, to insist on a jury trial rather than to depend on the court for guidance. But, in any event, defendant waived its right to a jury trial by failing later to renew its demand for a jury.

After plaintiff had reopened and then again rested its case defendant did not move to dismiss the erstwhile suit because of plaintiff's failure to establish a right to reformation, did not move to transfer the case to the law side of the court, and did not renew its demand for a jury. Defendant, whose answer contained six affirmative defenses, proceeded, without comment or remonstrance, to call its witnesses, introduce its evidence and submit its case to the court.

■■■ The completion of the plaintiff's case in chief has been firmly established as the critical point at which the defendant must finally protect his right to a jury trial or be deemed to have consented to submission of all issues to the court sitting without a jury. See *Olson v. Roop,* 255 Or 368, 467 P2d 437, 438 (1970), and cases there cited.[②] This rule is usually applied when the plaintiff has pleaded but failed to prove a right to equitable relief. It is equally applicable here

---

[②]
"'* * * However, in Winkleman v. Ore.-Wash. Plywood Co., 240 Or 1, 10, 399 P2d 402 (1965), we, finally, clearly held that a jury trial is waived by defendant's failure, at the completion of plaintiff's case in chief, to request that the case be transferred to the law side of the court for a jury trial. See also Ward v. Town Tavern et al, supra at 38, and Topolos v. Skotheim et al, 126 Or 683, 693, 250 P 235, 270 P 753 (1928). We believe this rule to be an eminently fair one, which adequately protects the right of a jury trial and at the same time avoids repetitive trials resulting from a change of heart after an adverse result is known."

where the complaint was amended during plaintiff's case in chief resulting in the failure either to plead or prove a cause of suit in equity. We do not agree that because this case was tried "in a somewhat casual manner" and because the trial judge may have still considered, even after the second amended complaint was filed, that there were both legal and equitable issues to try, that the defendant was excused from adequately protecting its right to a jury trial at every appropriate stage of the proceeding.

■ We turn next to defendant's claim that the court erred in finding for plaintiff. Since this is a law action we can reverse only if we find that the evidence required the trial court to find in favor of defendant as a matter of law. *State ex rel Salem Pac. v. Combo Constr.*, 254 Or 89, 458 P2d 410 (1969). We reverse under that rule because there is no evidence tending to prove one of the essential elements of plaintiff's case, i.e., that Ross and Millsap suffered any loss.

We have noted earlier that plaintiff abandoned its effort to reform the binder and elected in its second amended complaint to sue on the binder, which designated Ross and Millsap as the insured and plaintiff as the Mortgagee-Payee. As a consequence we must determine the rights of the parties under the binder as written and not on some hypothetical contract that might have been issued under other circumstances. We have scrutinized the testimony of Paul Martin, who represented plaintiff, Earl Millsap, who represented Ross and Millsap, and the insurance agent, Leonard Toates, who represented the defendant. It would serve no purpose to quote that testimony. It is sufficient to say that there was a failure to prove a meeting of

minds on the issuance of any different contract than the binder sued on.

■ As a general rule a loss payee is not a party to the insurance contract and cannot recover in his own right. According to Appleman:

> "It is generally stated that under such a clause the person so designated is a mere appointee to receive the proceeds to the extent of his interest, and the validity of the contract is not, for that reason, dependent upon the existence of an insurable interest in such appointee. Under an open loss payable clause, it makes the policy subject to any act or omission of the insured which might void, terminate, or adversely affect the coverage; and if the policy is not collectible by the insured, the appointee, likewise, cannot recover thereunder." 5A Appleman, Insurance Law and Practice (1970), 143-146, § 3335.

And in *Charles R. Allen, Inc. v. Rhode Island Ins. Co.,* 217 SC 296, 60 SE2d 609, 613 (1950), the court said:

> "* * * Such a clause does not create a new and independent contract between the insurance company and the third party. The party named does not recover in the event of loss as the party insured, but as the beneficiary under the policy in the right of the insured. Such a clause does not operate as an assignment of the policy. The party to whom the loss is payable is a mere nominee of the owner-insured to receive the insurance money. *Hence it is the damage sustained by the party insured and not by the party appointed to receive payment that is recoverable from the insurer.* * * *" (Emphasis supplied.)

Oregon has adopted this approach to the rights of a loss payee. In *Armbrust v. Travelers Ins. Co.,* 232 Or 617, 376 P2d 669 (1962) a party named as loss payee under a fire insurance policy brought the action

against the insurer; the insurer claimed that the named insured had not had an insurable interest in the property which was lost to fire. The court said:

> "Moreover, when an insurance policy contains a loss-payable clause, the 'loss payee' does not claim as an assignee of the policy, but merely as an appointee to collect the insurance; consequently, he must claim in the right of the insured, and not in his own right. 5 Couch, Insurance (2d ed 1960), 350, § 29:65. 'A fortiori, if insurance is payable to a mortgagee as his interest may appear, he is not entitled to recover, if the insured is not * * *.' 5 Couch, Insurance (1929), 4432, § 1215a." 232 Or at 621.

See, also, *Haskin et al v. Greene*, 205 Or 140, 149, 286 P2d 128 (1955).

Although the evidence is conflicting in some details, it is clear that prior to the loss plaintiff had agreed to deliver the loader to Ross and Millsap, who had agreed to use the loader on a trial basis and to pay rental for the loader while it was being used. Ross and Millsap had leased other equipment from plaintiff and could have retained the Skagit loader on a similar lease if it had proved satisfactory. It is conceded that the loader was destroyed while it was being driven by plaintiff to Trinity County for delivery to Ross and Millsap.

We assume that as a lessee or a prospective lessee, Ross and Millsap had an insurable interest in the loader, but we find no evidence whatever that Ross and Millsap sustained any loss. If Ross and Millsap sustained no loss, defendant owed nothing to Ross and Millsap and plaintiff, as Ross and Millsap's appointee, was entitled to nothing.

■ An insured may collect on a policy of property

insurance only by showing both an insurable interest and a loss by reason of the damage to or destruction of the property. The rule is stated in 4 Appleman, Insurance Law and Practice 16-17, § 2107, as follows:

"A contract of fire insurance is a personal contract for indemnity for the insurable interest possessed by the insured at the time of the issuance of the policy, and also at the time of loss. The insurer's liability is measured thereby. All such contracts of property insurance, whether of fire, marine, or other types are considered contracts of indemnity, intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster. Unless the insured has sustained an *actual loss*, the insurer has no liability." (Emphasis supplied.)

The requirement that the insured have both an insurable interest and sustain a loss is pointed out in *Smith v. Jim Dandy Markets*, 172 F2d 616, 618 (9th Cir 1949):

"It is argued that even if the assignment transferred the building to Jim Dandy Markets, Smith had an insurable interest in the building because of his lien thereon for the payment of the balance of the purchase price, and therefore should recover on his policy with Fireman's Fund Insurance Co. This argument fails because, regardless of Smith's interest in the building, he suffered no loss from its destruction. * * *"

The relationship between insurable interest and actual loss is discussed also in *Draper v. Delaware State Grange Mut. Fire Ins. Co.*, 28 Del 143, 91 A 206, 207 (1914) as follows:

"A contract of insurance is essentially a personal contract. Traders' Ins. Co. v. Newman, 120 Ind. 554, 22 N.E. 428. It is not a contract to insure property against fire, but is one to insure the owner

of property against loss by fire. Destruction by fire of the property described in the contract of insurance is not the contingency upon which the insurer promises to indemnify the insured. It is only when by fire the insured has sustained a loss that the insurer may be called upon to perform its contract of indemnity.

"As it is quite impossible for the insured to sustain a loss to property by fire unless he has an interest in the property, and as he may recover only when he has sustained a loss, it is now recognized that in actions upon contracts of fire insurance, excepting in certain classes, as in marine insurance, the existence of an insurable interest on the part of and the consequent loss sustained by the insured, must be shown and proved before he can recover."

The foregoing rule seems to have been applied in *Armbrust v. Travelers Ins. Co.*, supra, to deny recovery to a loss payee who had failed to prove that the named insured had either an insurable interest in or had sustained loss on account of damage to the insured property. The evidence showed that a truck was purchased on contract by one States, "dba Alcan Lumber Company," that it was used in Alcan's business, and that an Austin Whitmer was somehow involved in Alcan's operations. The policy of insurance covering the vehicle had been taken out by Whitmer. Whitmer was not a party to the sales contract and his relationship with States was not disclosed by the evidence, although there was some suggestion that he had leased the truck from States. There was no evidence that Whitmer had sustained any loss as a result of the damage to the truck. This court sustained the finding of the trial court that Whitmer had no insurable interest in the truck.

■ The present case is very close to *Armbrust* in

principle. Like the plaintiff in that case, plaintiff here, claiming as loss payee, must show the right of the named insured to collect for the damage under the policy. In *Armbrust* Whitmer had insured the truck, but plaintiff failed to show that he had had any interest in it. In this case the insurance is in the name of Ross and Millsap, and plaintiff has failed to show that the insured suffered any loss when the loader was destroyed. If there was no loss to the insured, in the absence of special provisions in the policy, there was no obligation to pay the insurance to its appointee.

It has been suggested that a lessee or bailee who insures property in which he has a limited interest is entitled in the event of a loss to collect the full value of the property and will hold the excess in trust for the benefit of the lessor or bailor. The law is to the contrary.

As between lessor and lessee it is stated in 1 Richards on Insurance (5th ed) 605, § 164, that "neither has any interest in a fire insurance policy taken out by the other, even though the policy covers the value of both of their interests in the property."

5 Couch on Insurance 2d 343, § 29:60, states the rule thus:

> "In the absence of any agreement to the contrary, the proceeds of insurance obtained by either the lessor or the lessee, or his privy, cannot be claimed, in whole or in part, by the other, even though the policy covers the value of the interests of both in the property."

This court has applied the foregoing rule in two well reasoned cases.

■ In *Miller v. Gold Beach Packing Co.,* 131 Or 302, 282 P 764 (1929) fire destroyed a building which

had been erected on leased land by the lessee. By the terms of the lease, the building would have become the property of the lessors at the expiration of the lease. The lessee had taken out fire insurance and after the fire the lessor claimed an interest in the insurance proceeds. The insurance company paid the proceeds, representing the full value of the building at the time of the loss, into court. The issues before the court concerned only the respective rights of the lessor and lessee in that sum. The lessor argued

> "* * * that the procurement of fire insurance to the full value of the building and its collection upon the destruction of the latter is conclusive evidence that the tenant insured both estates, and that therefore he must account for the portion of the proceeds of the insurance which represents the value of the remainderman's estate, * * *." 131 Or at 307-308.

The court rejected that argument and adopted what was said to be the majority rule—that the lessor has no rights in the proceeds of insurance taken out by the tenant in his own name. The majority and minority positions are summarized at pages 308-310 of the opinion. The case is clear authority for the rule that the owner of property which has been insured by a lessee has no claim on the insurance proceeds, where there is no evidence that the insured intended to indemnify him.

To the same effect is *Yoshida v. Security Ins. Co.*, 145 Or 325, 336, 26 P2d 1082 (1933), in which the insureds, who were month-to-month tenants were held entitled to keep the full proceeds of their insurance on the buildings as against the landlord's claim of a right to share in the proceeds. Although it does not clearly appear from the opinion, the abstract of record

in *Yoshida* discloses that the insurance proceeds had been paid into court. The amount which the company had to pay under the policy was not litigated.

The effect of the *Miller* and *Yoshida* cases is to dispose of any contention that plaintiff in this case is entitled to the proceeds of Ross and Millsap's insurance simply by virtue of the ownership of the loader.

The rule is the same as to bailor and bailee. We quote from 5 Couch on Insurance 2d 342, § 29:58, as follows:

> "Where the bailee effects insurance for his own interest, the bailor is not entitled to recover any part of the proceeds."

The rule is thus expressed in 5A Appleman, Insurance Law and Practice 132, § 3333:

> "The mere fact that a bailor's property is damaged or destroyed while in the possession of a bailee will not entitle him to share in any insurance taken out by the bailee."

■ It is generally accepted that a bailee *may,* if he wishes, insure his bailor's interest as well as his own. When he does so, he can recover the full value of the property and account to the bailor for the excess over his own interest. The question whether a bailee has insured the bailor's interest turns on the language of the policy, and such coverage is often found where a policy reads "for account of whom it may concern," "property held by the insured in trust or on commission," "property for which the insured is liable," or other language indicating an intent to insure additional interests. 5A Appleman, Insurance Law and Practice 132-133, 135, § 3333; 5 Couch on Insurance 2d 336-337, § 29:56; 1 Richards on Insurance 601-602,

§ 162. Illustrative cases are *Home Ins. Co. v. Baltimore Warehouse Co.*, 93 US 527, 23 L ed 868, 869-870 (1876); *Old Colony Insurance Company v. Lampert*, 129 FS 545, 548-549 (D NJ 1955); *Fire Ins. Asso. v. Merchants' & M. Transp. Co.*, 66 Md 339, 7 A 905, 907, 59 Am Rep 162 (1887); *Penn v. Commercial Union Fire Ins. Co.*, 233 Miss 178, 101 S2d 535, 67 ALR2d 1238 (1958); *Symmers v. Carroll*, 207 NY 632, 101 NE 698, 699 (1913). There is no suggestion in this line of authority that without such an intent, embodied in the policy language, the bailee's insurance will be deemed to cover the bailor's interest.

 The rule with regard to the lessor-lessee and bailor-bailee relationships is a concomitant of the general rule that an insured with only a limited interest in the property can recover only to the extent of his limited interest. This court has apparently not passed on this precise point, but the rule is of general application. It is stated in 3 Richards on Insurance 1613, § 503, as follows:

> "If the insured has an insurable but only a qualified, partial, or limited interest in the property insured against fire, he may not recover the full value or an amount exceeding his actual interest in the res. * * * But the general rule is that the insured is limited in recovery to the value of his actual interest in the property insured."

See, also, the following leading cases: *Lighting Fixture Supply Co. v. Fidelity Union Fire Ins. Co.*, 55 F2d 110 (5th Cir 1932); *American Ins. Co. v. Porter*, 25 Ala App 250, 144 So 129 (1932); *Harrington v. Agricultural Insurance Company*, 179 Minn 510, 229 NW 792, 68 ALR 1340 (1930); *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.*, 27 Wis 2d 112, 133 NW2d 737 (1965). See, also, Annotation, 68 ALR 1344.

The loader was owned by plaintiff and was still in plaintiff's possession when destroyed. Plaintiff, of course, had an insurable interest in the loader and suffered a loss, which it collected from its own insurance carrier.[9] Plaintiff, however, has suggested no legal theory entitling it to recover as a loss payee on Ross and Millsap's policy without proof that Ross and Millsap sustained a loss. It is worth noting that plaintiff's brief completely ignores the contention that Ross and Millsap suffered no loss as a result of the destruction of the loader. Plaintiff argues only that Ross and Millsap had an insurable interest.

Since there was no evidence tending to prove that Ross and Millsap sustained any loss, we hold that the trial court should have found for the defendant as a matter of law. In view of that holding we need not consider defendant's other claims, including the claim that plaintiff was not entitled to an attorney's fee.

The judgment of the trial court is reversed.

DENECKE, J., specially concurring.

I concur in the result in this case but not necessarily in the dicta concerning the rights of the parties to a lease or bailment to insurance proceeds.

O'CONNELL, C. J., dissenting.

Mr. Martin, plaintiff's agent, testified that when he called the Van Doren Agency, which was the agent for defendant Oregon Automobile Insurance Company, he "explained that Ross and Millsap wanted the equipment immediately and that he wanted a

---

[9] Plaintiff was apparently paid by its own insurer on a loan receipt and brought this action on behalf of its insurer to compel defendant to contribute one-half of the loss.

verbal binder on it, and also TER to be named as additional insured." When plaintiff received a copy of the binder it immediately replied by letter, stating that "We need a 10-day cancellation clause and also an additional insured clause naming Transportation Equipment Rentals, Inc. as additional insured to attach to this binder." This letter was mailed before the occurrence of the accident which resulted in the destruction of the vehicle. The letter would tend to confirm Martin's assertion that TER was to be covered by the binder as an additional insured.

Defendant's agent testified that he understood that plaintiff was selling the equipment to Ross and Millsap and that TER was to be named as mortgagee-payee. However, the trial court could have rejected this version of the transaction and accepted plaintiff's testimony as a true statement of the transaction.

But even if we accept defendant's contention and treat plaintiff as a mortgagee-payee, the binder reveals an intent on the part of the insurer to include plaintiff as a loss payee under the policy. As a loss payee plaintiff would have a derivative right to collect under the policy to the extent that Ross and Millsap would be entitled to recover from defendant insurer.

The majority opinion takes the position, however, that plaintiff could have no derivative right because when there is a bailment, the bailee cannot recover an amount exceeding his actual interest in the property (relying upon 3 Richards on Insurance § 503, 1613 (5th ed 1952)).

Leaving aside the question of the bailor's right to recover from the bailee a portion of the proceeds representing the bailor's interest, there is ample au-

thority for the proposition that the bailee may recover the full value of the property insured in spite of his limited interest.[1] Since the insurer has received a premium predicated upon the obligation to pay the full amount of the loss, the insurer should have no cause to complain. However, if the bailee were permitted to recover the entire proceeds, there would be the danger that he might destroy the property in order to reap the proceeds exceeding his interest. The simple solution to this danger is to permit the bailee to retain only that part of the proceeds representing his interest, and to require him to hold the balance as trustee for the bailor. That solution has found acceptance in some jurisdictions.[2] I think that we should adopt it.

---

[1] In 5A Appleman, Insurance Law and Practice § 3333, 132-133 (rev. 1970), the rule is stated:

"* * * [A] bailee, insuring the property bailed to its full value, may recover on behalf of the bailor for the actual loss sustained. In such event, there is held to be a direct interest in the bailor in such insurance, subject to any rights which the bailee may have under the policy. Therefore, the surplus insurance money over and above the bailee's own loss constitutes money held in trust for the bailor. [footnotes omitted]"

To the same effect see 5 Couch on Insurance § 29:56, 336-338 (2d ed 1960) and 1 Richards on Insurance § 162, 601-602 (5th ed 1952).

Some courts have permitted direct recovery by the bailor even in the absence of special policy language indicating an intent to insure bailed property; see, e.g., Babcock & Wilcox Co. v. Parsons Corporation, 298 F Supp 898 (D Neb 1969); Richelieu, Etc. Nav. Co. v. Thames & Mersey Ins. Co., 58 Mich 132, 24 NW 547 (1885). For a similar result under special circumstances see Coburn v. Fireman's Fund Insurance Co., 86 Idaho 415, 387 P2d 598 (1963).

[2] See, e.g., Goldstein v. Harris, 24 Ala App 3, 130 So 313 (1930), cert. denied 221 Ala 612, 130 So 315; Allcorn v. Commonwealth Mut. Fire Ins. Co. of Pa., 174 Pa Super 489, 102 A2d 179 (1954); 5 Couch on Insurance § 29:57, 339 (2d ed 1960); 68 ALR 1344, 1348.