Argued October 10, 1974, reversed and remanded
with instructions February 27, 1975

ALLAN & LEUTHOLD, INC., *Respondent, v.*
TERRA INVESTMENT COMPANY, *Appellant.*

532 P2d 218

*William E. Hurley* of Bernard, Hurley, Hodges & Kneeland, Portland, argued the cause and filed briefs for appellant.

*Donald H. Joyce,* Portland, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, SLOPER and LEAVY, Justices.

HOLMAN, J.

Plaintiff brought this case in a court of equity to foreclose a mechanic's lien for surveying work upon defendant Terra Investment Company's property. Defendant then filed a legal counterclaim for damages because of poor workmanship arising out of the surveying which was the basis for plaintiff's claim. The trial judge erroneously overruled plaintiff's objection to defendant's legal counterclaim in what was then, ostensibly, an equity case. When put to proof plaintiff could not prove a valid lien. After plaintiff failed to prove equitable cognizance in its case in chief, defendant did not object to the equity court's continuing with either plaintiff's claim or defendant's counterclaim. Neither did plaintiff object to the further consideration of its claim, although it continued to object

to defendant's counterclaim. The trial court held that defendant was not entitled to recover on its counterclaim and that although plaintiff had not proved a valid lien, it had a good claim, and the court awarded plaintiff a judgment.

Defendant appealed, seeking de novo consideration of both plaintiff's judgment and defendant's counterclaim. Although plaintiff contends that defendant cannot assert a legal counterclaim in what was originally an equity case, it nevertheless contends the appeal should be treated as one at law and defendant should not be entitled to a de novo consideration of the facts upon which plaintiff's judgment was based.

It is this court's view that both parties availed themselves of the use of the services of a court of equity for a trial of legal claims and that both waived their right to proceed at law. The two significant differences between proceedings at law and in equity are a jury trial at law and de novo review upon appeal in equity.

In the cases of *Olson v. Roop,* 255 Or 368, 467 P2d 437 (1970) and *Winkleman v. Ore.-Wash. Plywood Co.,* 240 Or 1, 10, 399 P2d 402 (1965), we decided that a defendant in the position of defendant here waived its right to have its case tried at law by failing to ask at the completion of plaintiff's case in chief that the case be transferred to the law side of the court. In *Olson* we said:

"* * * However, In *Winkleman v. Ore.-Wash. Plywood Co.,* 240 Or 1, 10, 399 P2d 402 (1965), we, finally, clearly held that a jury trial is waived by defendant's failure, at the completion of plaintiff's case in chief, to request that the case be transferred to the law side of the court for a jury trial. See also *Ward v. Town Tavern et al, supra* at 38, and

*Topolos v. Skotheim et al,* 126 Or 683, 693, 250 P 235, 270 P 753 (1928). We believe this rule to be an eminently fair one, which adequately protects the right of a jury trial and at the same time avoids repetitious trials resulting from a change of heart after an adverse result is known." 255 Or at 370-71.

In the opinion, we quoted from *Ward v. Town Tavern et al,* 191 Or 1, 38, 228 P2d 216, 42 ALR2d 662 (1951), as follows:

"'* * * Notwithstanding the fact that the defendant's motion deemed the lien invalid, it did not ask that the cause be transferred to the law side of the court and that it be tried from there on as a law action. We add that *after defendant had become satisfied from the evidence* that the lien was invalid, *it did not object to the jurisdiction of equity over the remaining phases of the controversy.*' * * *." 255 Or at 372 (Emphasis ours).

The above authority dictates that defendant acquiesced in the court's procedure by not objecting to the submission of plaintiff's claim to the court and by its submission of its legal counterclaim. "[I]t did not object to the jurisdiction of equity over the remaining phases of the controversy," which includes appellate review.

■ Plaintiff, on the other hand, filed what was a legal case in a court of equity. It can be argued that plaintiff may not have known until the proof was in whether it had a case of equitable cognizance or not and that if it found it did not have one, it was entitled to proceed at law. However, it certainly cannot be said that it did not have the same opportunity as defendant had to analyze its own proof at the completion of its case and to decide whether it had made out one of equitable cognizance. If a plaintiff decides he has not, he can move for a transfer to the law side of the court in the same manner as a defendant is required to do.

We should not put a plaintiff, who made the original mistake and files the case on the wrong side of the court, in any better position than our cases put a defendant. If a defendant must make up his mind and move at the end of a plaintiff's case, the plaintiff, who starts the fiasco, should be placed in a no different position. We therefore conclude that plaintiff has likewise submitted the controversy to the mercies of a court of equity and its procedures, and that it should not be able to avoid a legal counterclaim, after it fails to prove equitable cognizance, by failure to request that its legal claim be transferred to a court of law.[1]

The dissent argues that *Wiggins v. Hendrickson et ux,* 191 Or 285, 229 P2d 652 (1951), is to the contrary. In *Wiggins* the plaintiff filed a non-defective lien but could not prove the defendant owed the debt upon which the lien was based. The court erroneously allowed the defendant to file and try a counterclaim over the plaintiff's objection. Upon trial the court found against the plaintiff on his claim and for the defendant on his counterclaim. Upon appeal this court sent the case back for a jury trial. The distinction between *Wiggins* and this case is that the plaintiff in *Wiggins* never had an opportunity for a jury trial on the counterclaim. As long as his lien was in proper

---

[1] The dissent bases its opinion upon the proposition that the plaintiff is forced, in this instance, to make a choice without knowing whether the trial court is going to uphold the validity of its lien or not, and by moving for a transfer to the law side of the court and a jury trial, it must give away the validity of a lien not yet held to be invalid. It is not necessary that plaintiff do any such thing. If, in fact, a plaintiff wishes a jury trial if his lien is invalid and equitable cognizance is absent, all he has to do is to inform the court, at the end of his case in chief, that he wishes a jury trial in such event, but that he is not abandoning his contention that his lien is valid. Were it otherwise, plaintiff would have the best of both worlds—he takes a win if he gets it, and a jury trial at law if he loses.

form, the plaintiff had a case of equitable cognizance and there was no basis for his asking for a transfer to the law side of the court. All he could do was to make an objection to the counterclaim's being filed in the equity court, which objection he made. After putting on its case, the plaintiff here had an opportunity, of which it did not avail itself, to evaluate its proof and to move for a jury trial on both its claim and the counterclaim if, in its judgment, it had not proved a case of equitable cognizance. It did not so move, but, rather, it tried both its claim and the counterclaim to the court.

It is our conclusion that the parties submitted the controversy to a court of equity with the knowledge that equity procedures provide for appeals de novo. For all we know, one of the reasons the parties did not move the controversy to the law side of the court may have been that they thought they had an anchor to windward in the form of a de novo consideration on appeal if the result was adverse.

Plaintiff's original claim was $2,025.00. It admitted its errors cost defendant $517.33, leaving a balance of $1,507.67. Defendant claimed that plaintiff's errors in surveying cost it $2,551.75 in additional surveying fees to correct the errors plus $1,710.00 for added plumbing costs. It also claims plaintiff's work was worth nothing because of the errors it made. The trial court found there was no evidence that additional surveying and plumbing costs caused by plaintiff's errors were the obligations of defendant. The trial court is partially correct. There is no evidence that defendant was obligated to pay the bill for additional plumbing, but there is evidence that it became obligated to pay the additional cost of surveying allegedly

caused by plaintiff's errors. Mr. Smith, the surveyor who made the corrections, testified he was hired by a construction company but that defendant paid his bills. There is no evidence who was obligated for the plumbing. Defendant claimed the transcript is in error—that it was not Smith who so testified but rather the foreman of the construction company whose reference was to all the bills, and not merely to those of the surveyor. Assuming this is so, we can do nothing about it. The transcript has been settled and if errors existed, defendant should have had them corrected. This court is bound by the record.

■ It is our conclusion that the cost of the additional surveying was the result of plaintiff's errors and that the record justifies a counterclaim of $2,551.75. We cannot hold, as defendant contends, that plaintiff's work was worth nothing. Plaintiff had been working for many months. Its lien was for its last month's charges before defendant discovered plaintiff's errors and discharged plaintiff. We have no way of determining how much of plaintiff's charges was for work found to be faulty. Nor can we conclude that $2,551.75 of plaintiff's work was bad merely because that is the amount it took to correct it. One hour's mistakes might take weeks to correct, for all we know. The credit of $517.33 allowed by plaintiff because of its admitted errors was not for surveying costs, so there is no duplication between defendant's claim for surveying, which we are allowing, and plaintiff's credit. As a result, the most this court can do is to set the two claims off against each other, which leaves defendant with a balance of $1,044.08.

The decree of the trial court is reversed and the case is remanded with instruction to enter a decree

for defendant in the sum of $1,044.08 together with its costs and disbursements.

McAllister, J., concurs in the result.

LEAVY, J., Pro Tempore, dissenting.

The majority holds that plaintiff's failure to request that its legal claim be transferred to the law side of the court, after an opportunity to evaluate its proof, is a waiver of its constitutional right to both a jury trial and to avoid de novo review. Oregon Constitution, Art VII, § 3 (Amended). The result has the superficial glamour of being symmetrical to *Olson v. Roop*, 255 Or 368, 467 P2d 437 (1970), but does violence to the record in this case and adds confusion to the law-equity distinction.

With respect to the record, I find that plaintiff did about all that civility will permit in objecting to the counterclaim. It based its objections on its consistent position that it was proceeding with a suit in equity as distinguished from an action at law. In the opening statement, plaintiff's counsel, Mr. Joyce, said:

> "The only factor in this case, I think under the general denial which is paragraph I of the answer, they're entitled to show these amounts as a set off to his lien. In other words, it goes to knock his lien down because of the reasonableness of the services. But, they're not entitled to a counter-claim under the Wiggins versus Hendrickson, 191 Ore 285. So, I am objecting to the introduction of any evidence before the Court in support of this counter-claim. It may be some of the evidence that supports their counter-claim would be the same kind of evidence that goes in defense of the lien under the general denial. I am certainly going to object to any evidence on the counter-claim that might exceed the amount of the lien, so I don't have to be jumping up all the time.

"THE COURT: All right."

When plaintiff rested and defendant Terra Investment Company began calling witnesses, it happened this way:

"MR. JOYCE: [Plaintiff's counsel] That is all.

"THE COURT: You may step down. Do you have any other witnesses?

"MR. JOYCE: No other witnesses.

"THE COURT: Mr. Hurley?

"MR. HURLEY: [Defendants' counsel] Call Mr. Clark.

"THE COURT: Come forward and stand right there and face her and raise your right hand."

When defendant Terra Investment Company first offered evidence of damage in excess of plaintiff's lien, plaintiff objected as follows:

"MR. JOYCE: If the Court please. At this juncture I want to remind the Court of my objection to introduction of evidence under his counter claim. By the time we deduct the admitted errors that Mr. Leuthold made and the value, this leaves about $1,600 due Mr. Leuthold. This man is testifying about a $1,700 charge. And this gets farther than set off and gets into counter claim.

"THE COURT: I will over rule the objection. He may want to treat it as a set off after while. We can change the pleadings. Anyway at this state I understand your objections, but—

"MR. JOYCE: I won't have to make a continuing one?

"THE COURT: You know how you read some of these recorded cases. Sometimes you do what you think. I know what you are talking about. But sometimes—

"MR. JOYCE: If the Court is going to make a rule on my objections then I will sit down and be quiet. If you do that we must assume that you are not going to consider inadmissable [sic] evidence.

"THE COURT: I think that is a fair assumption. But, I may conclude this may not be proper. And he may have to treat it as a contract. And you could consider the questions of the counter claim. If at the proper time you want to move that all the testimony relating to counter claim be excluded why this is probably what I would suggest you do. So, if you don't want—

"MR. JOYCE: You mean stricken?

"THE COURT: What did I say?

"MR. JOYCE: I will reserve that.

"THE COURT: And you can move at the proper time and it will all be stricken."

When the trial resumed, after a delay of many months, plaintiff again objected. Its objection and the fruits thereof are as follows:

"MR. JOYCE: I think I did and I would like the record to indicate I had interposed an objection at the beginning of the defense on counter claiming this.

"THE COURT: There is no counter claim—well, the record will show your objection is overruled. You may have a complete continuing objection to any testimony relating to a counter claim."

The majority would require that plaintiff, when it rested, be a clairvoyant judge of its own case and know that it had failed to make out a case of equitable cognizance. At that time, the trial judge had not ruled that the lien was bad. In denying the lien, after taking the case under advisement, he said in his letter opinion, "without going into all the lengthy reasoning, I do not

think the plaintiff's claim is lienable within O.R.S. 87.265, O.R.S. 87.270. I'll treat the action as one in contract for the reasonable value of the services."

Plaintiff contended that it had a valid lien until the court ruled that it did not. So long as plaintiff was contending that its lien was valid it could not "object to further consideration of its claim" or "request that its legal claim be transferred to a court of law." The validity of the claim is essential to the lien; thus, the litigation of the claim is consistent with and essential to equitable jurisdiction. The judge never told plaintiff why its lien was bad nor does the majority tell us. Failure of the plaintiff to correctly decide whether it had made out a case of equitable cognizance and to move to transfer the case to the law side of the court cost the plaintiff its constitutional right to jury trial and "submitted the controversy to the mercies" of this court sitting as a court of equity. The majority then decides the case on the merits against plaintiff on a counterclaim which in their opinion is in the case only as the product of the original error of the trial judge in overruling plaintiff's repeated objections.

ORS 16.310 provides:

"The counterclaim of the defendant in a suit shall be one upon which a suit might be maintained by the defendant against the plaintiff in the suit; and in addition to the cases specified in paragraphs (a) and (b) of subsection (1) of ORS 16.300, it is sufficient if it is connected with the subject of the suit."

In an equity suit a counterclaim containing no matters of equitable cognizance may be successfully attacked by objection to the introduction of testimony. *Glaser et al v. Slate Const. Co.,* 196 Or 625, 251 P2d 441 (1952); *Eagle Point v. Hanscom,* 121 Or 40, 252 P

399 (1927); *McCargar et al v. Wiley,* 112 Or 215, 229 P 665 (1924); *Kondo v. Aylsworth,* 81 Or 225, 158 P 946 (1916).

*Wiggins v. Hendrickson et ux,* 191 Or 285, 229 P2d 652 (1951), was a suit brought to foreclose a mechanic's lien in which the defendants counterclaim, asking for damages. The trial court dismissed plaintiff's complaint and awarded defendants a judgment on the counterclaim. The judgment was set aside on appeal with this language:

> "In the instant case, however, defendants have gone further and have endeavored to recover a money judgment in excess of plaintiff's claim. This, as pointed out, cannot be accomplished in a suit of the nature before us. Defendants' counterclaim contains matters of legal rather than of equitable cognizance. The counterclaim is predicated on a breach of contract wherein damages are sought. Equity is not involved. The judgment of the trial court awarding damages to the defendants on their counterclaim was erroneous." 191 Or at 288.

The result arrived at by the majority is identical to the result reversed in *Wiggins v. Hendrickson et ux, supra,* when arrived at by a trial court. The majority seeks to distinguish *Wiggins* by saying that in *Wiggins* as long as the lien was in proper form, the plaintiff had a case of equitable cognizance and there was no basis for his asking for a transfer to the law side of the court. The lien failed in *Wiggins* because the plaintiff could not prove the claim on which it was based. Because of no cross-appeal in the instant case, the majority is not required to determine whether plaintiff's contention in the trial court that its lien was in good form was frivolous, arguable, or valid. We are told only that it should have known that it was bad. Ironically, the result reached by the majority on

the merits tells us that had the lien not failed because of its lack of good form it would have failed for the same reason as the lien failed in *Wiggins*. Any distinction between this case and *Wiggins* is as subtle as the difference between law and equity procedure.

The majority, in applying the rule of *Olson v. Roop, supra,* says that a plaintiff has the same opportunity as a defendant to analyze its own proof at the completion of its case.

To avoid a waiver of an equity court's lack of authority, a defendant's analysis of the plaintiff's lien need only be that it is bad—hardly a position inconsistent with anything he has been saying both in the pleadings and at trial. A defendant can then request that the legal claim be transferred to a court of law. There is no penalty for being wrong in the sense that defendant must give up some contention or right. On the other hand, the majority holds that given the error by the trial judge, which allowed the counterclaim to remain in this case, the only way for plaintiff to have avoided waiver of lack of authority on the counterclaim was to have been correct in its contention that it was entitled to equitable relief, or to have abandoned its request for such relief. Ignorance of any of the numerous reasons why a statutory lien might be bad (except for the one contained in *Wiggins*) carries with it the penalty of loss of the constitutional right to a jury trial.

I would hold that plaintiff's objections were sufficient to prevent a court of equity from obtaining authority to decide the purely legal rights of the parties, both as to the claim and counterclaim. Given the inability of equity to decide the purely legal claims asserted in the case, I would reverse the judgment of the

trial court, entered while sitting in equity, and remand the cause to permit the transfer of the case to the law side where both parties may litigate their respective demands for damages.[1]

HOWELL and SLOPER, J.J., join in this dissent.

[1] ORS 16.460(3):

"No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have the right to amend his pleadings to obviate any objection on that account. Testimony taken before the amendment and relevant to the issue in the law actions shall stand with like effect as if the pleadings had been originally in the amended form."